No. 15-1183

# United States Court of Appeals
# for the Federal Circuit

SYNOPSYS, INC.

*Plaintiff-Appellant,*

— v. —

MICHELLE K. LEE, Deputy Director, U.S. Patent & Trademark Office, and Deputy Under Secretary of Commerce for Intellectual Property, UNITED STATES PATENT AND TRADEMARK OFFICE, MENTOR GRAPHICS CORPORATION

*Defendants-Appellees.*

————————

On Appeal from the United States District Court for the Eastern District of Virginia
No. 1:14-cv-00674-HCC-IDD
Hon. James C. Cacheris

————————

## OPENING BRIEF AND ADDENDUM OF APPELLANT SYNOPSYS, INC.

————————

I. Neel Chatterjee
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Andrew D. Silverman
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Robert M. Loeb
Eric A. Shumsky
Jeremy Peterman
Orrick, Herrington & Sutcliffe LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400
rloeb@orrick.com

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for appellant certifies the following:

1.  Counsel for appellant represents Synopsys, Inc.

2.  Synopsys, Inc. is the name of the real party in interest.

3.  There are no parent corporations and/or any publicly held companies that own 10 percent or more of the stock of appellant Synopsys, Inc.

4.  The following are the names of all law firms and the partners or associates that appeared for appellant Synopsys, Inc., in the district court or agency and/or are expected to appear in this Court:

Orrick, Herrington Sutcliffe LLP
Adya Baker
James W. Burke
I. Neel Chatterjee
Robert M. Loeb
Jeremy Peterman
Cam T. Phan
Eric Shumsky
Andrew D. Silverman
David Bartholomew Smith

Date:  March 5, 2015          /s/ Robert M. Loeb
                              Robert M. Loeb
                              *Counsel for Plaintiff-Appellant*

i

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES.....................................................................iv

STATEMENT OF RELATED CASES ....................................................ix

INTRODUCTION.......................................................................................1

STATEMENT OF JURISDICTION .........................................................5

STATEMENT OF ISSUES.........................................................................6

STATEMENT OF THE CASE ...................................................................6

I.  STATUTORY AND REGULATORY BACKGROUND...................6

    A.  The Administrative Procedure Act................................6

    B.  *Inter Partes* Proceedings ................................................7

        1.  The old *Inter Partes* Reexamination process.......7

        2.  The America Invents Act's new *Inter Partes* Review process ................................................. 10

    C.  The PTO Promulgates 37 C.F.R. § 42.108.................. 14

II.  FACTUAL AND PROCEDURAL BACKGROUND...................... 17

    A.  Synopsys.................................................................... 17

    B.  Synopsys Challenges 37 C.F.R. § 42.108 Under The Administrative Procedure Act............................ 18

    C.  The District Court's Decision..................................... 19

SUMMARY OF THE ARGUMENT ....................................................... 21

STANDARD OF REVIEW....................................................................... 23

ARGUMENT ............................................................................................. 23

I.  CONGRESS DID NOT BAR APA CHALLENGES TO PTO REGULATIONS THAT ARE CONTRARY TO LAW ................... 23

    A.  The AIA's Plain Text, Structure, And Legislative History Evince No Clear Intent To Preclude APA Review Of PTO Regulations ....................................... 25

B.    The Supreme Court Has Long Recognized That APA Review Is Available To Challenge An Agency's Administration Of Specialized Review Proceedings ................................................................. 33

C.    APA Review Of The PTO's Regulation Is Required To Fulfill Congress's Intent To Make *Inter Partes* Review An Alternative To Litigation ..... 40

II.    NO OTHER ADEQUATE REMEDY EXISTS FOR CHALLENGING 37 C.F.R. § 42.108 ........................................... 46

CONCLUSION ........................................................................ 52

ADDENDUM

Memorandum Opinion, Dated October 9, 2014 (DKT 44) .............. A1-A23

Order, Dated October 9, 2014 (DKT 45) ............................................ A24

STATUTORY ADDENDUM

5 U.S.C. § 701 ........................................................................ Ad1

5 U.S.C. § 704 ........................................................................ Ad2

5 U.S.C. § 706 ........................................................................ Ad3

35 U.S.C. § 141 .................................................................... Ad4-5

35 U.S.C. § 314 ...................................................................... Ad6

35 U.S.C. § 315 ................................................................... Ad7-8

35 U.S.C. § 316 ................................................................. Ad9-10

35 U.S.C. § 318 ............................................................... Ad11-12

35 U.S.C. § 319 .................................................................... Ad13

37 C.F.R. § 42.108 ............................................................... Ad14

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) .................................................................... 23, 25

*Action Alliance of Senior Citizens v. Leavitt,*
  483 F.3d 852 (D.C. Cir. 2007) ............................................... 39

*Barsebäck Kraft AB v. United States,*
  121 F.3d 1475 (Fed. Cir. 1997) ............................................ 21

*Belkin Int'l, Inc. v. Kappos,*
  696 F.3d 1379 (Fed. Cir. 2012) .............................................. 8

*Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984) .................................................................... 24, 38

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) .............................................................. 23, 47, 50

*Bowen v. Mich. Acad. of Family Physicians,*
  476 U.S. 667 (1986) ................................................................. *passim*

*Cook v. Principi,*
  318 F.3d 1334 (Fed. Cir. 2002) ............................................ 30

*Cooper Techs. Co. v. Dudas,*
  536 F.3d 1330 (Fed. Cir. 2008) ....................................... 7, 31

*Cooper Techs. Co. v. Dudas,*
  No. 1:07cv853 (LMB/BRP) 2007 U.S. Dist. LEXIS 88046
  (E.D. Va., Nov. 30, 2007) .................................................... 31

*In re Cuozzo Speed Technologies, LLC.,*
  No. 2014-1301, 2015 U.S. App. LEXIS 1699 (Fed. Cir. Feb.
  4, 2015) ............................................................................... 13, 27, 32

iv

*In re Dominion Dealer Solutions, LLC*,
    749 F.3d 1379 (Fed. Cir. 2014) ........................................... 14

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ............................................ 47

*K/S HIMPP v. Hear-Wear Techs., LLC*,
    751 F.3d 1362 (Fed. Cir. 2014) ............................................ 8

*Lorillard, Div. of Loew's Theatres, Inc. v. Pons*,
    434 U.S. 575 (1978) ....................................................... 32

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991) ............................... 3, 22, 27, 30, 32, 34, 35, 37, 51

*Mentor Graphics Corp. v. Rea*,
    No. 1:13-cv-00518 CMH-TCB (E.D. Va.) ..................................... xi, 27

*In re P&G Co.*,
    749 F.3d 1376 (Fed. Cir. 2014) .......................................... 14

*Invensys Sys. v. Emerson Elec. Co.*,
    No. 6:12-cv-00799, 2014 U.S. Dist. LEXIS 128454 (E.D.
    Tex. July 25, 2014) ...................................................... 42

*Pregis Corp. v. Kappos*,
    700 F.3d 1348 (Fed. Cir. 2012) ................................. 23, 38, 39, 47, 50

*Russello v. United States*,
    464 U.S. 16 (1983) ....................................................... 30

*Sackett v. EPA*,
    132 S.Ct. 1367 (2012) ................................................. 45, 50

*Shalala v. Ill. Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000) ........................................................ 39

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
    749 F.3d 1373 (Fed. Cir. 2014) ....................................... 13, 48

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ...................................................... 39

*U.S. Nutraceuticals LLC v. Cyanotech Corp.*,
    No. 5:12-cv-366-Oc-10PRL, 2013 U.S. Dist. LEXIS 163057
    (M.D. Fla. Oct. 15, 2013) ................................................................ 42, 43

*Whitman v. Am. Trucking Ass'ns, Inc.*,
    531 U.S. 457 (2001) ...................................................................... 29, 43

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
    Nos. 5:11-cv-671, 5:11-cv-4407 (EJD), 2012 U.S. Dist.
    LEXIS 170736 (N.D. Cal. Nov. 30, 2012) ...................................... 8, 43

**Federal Statutes**

5 U.S.C. § 701 ............................................................................ 6, 25

5 U.S.C. § 702 ........................................................................ 5, 6, 21

5 U.S.C. § 704 ............................................................................ 6, 47

5 U.S.C. § 706 ................................................................................. 7

8 U.S.C. § 1160 ............................................................................... 35

28 U.S.C. § 1295(a)(1) ...................................................................... 5

28 U.S.C. § 1331 .............................................................................. 5

35 U.S.C. § 141 (2010) ..................................................................... 31

35 U.S.C. § 141(c) ........................................... x, 2, 3, 13, 14, 28, 31, 33, 48

35 U.S.C. § 311(a)-(b) ...................................................................... 11

35 U.S.C. § 312(a) (2010) ................................................................... 8

35 U.S.C. § 313 (2010) ....................................................................... 8

35 U.S.C. § 314 ........................................... xi, 3, 11, 13, 19, 27, 28, 32, 33

35 U.S.C. § 315 (2010) ..................................................................... 10

35 U.S.C. § 315(e)(2) ..................................................................... 1, 12

35 U.S.C. § 316 ............................................................ 13, 26, 30

35 U.S.C. § 318 ................................................................ *passim*

35 U.S.C. § 319 .................................................................... 13

42 U.S.C. § 1395ff(b)(1)(C) (1982 ed., Supp. II) ...................................... 36

America Invents Act,
   Pub. L. No. 112-29, 125 Stat. 284 (2011)............................................. 1

## Federal Rules and Regulations

37 C.F.R. § 42.4 .................................................................. 11

37 C.F.R. § 42.108 ............................................................ *passim*

77 Fed. Reg. 48,680 (Aug. 14, 2012) ................................................. 16

77 Fed. Reg. 48,698 (Aug. 14, 2012) ................................................. 16

77 Fed. Reg. 48,702 (Aug. 14, 2012) ................................................. 16

Fed. R. App. P. 4(a)(1)(B) ........................................................... 5

Federal Circuit Rule 47.5.............................................................ix

## Legislative Materials

145 Cong. Rec. S13259 (Oct. 27, 1999) ................................................ 7

154 Cong. Rec. S9989 (daily ed. Sept. 27, 2008)................................... 1, 12

157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) ........................... 10, 12, 42

H.R. Rep. No. 112-98 (2011)....................................................... 1, 7

S. Rep. No. 110-259 (Jan. 24, 2008) ............................................ 10, 12, 42

S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945) .................................... 24

**Other Authorities**

*IBM Corp., Comments regarding "Changes to Implement
    Inter partes Review Proceeding"* (Apr. 6, 2012),
    http://tinyurl.com/kzwhvlr ................................................................. 15

Brian J. Love & Shawn Ambwani, *Inter Partes Review: An
    Early Look at the Numbers*, 81 U. Chi. L. Rev., Dialogue
    93 (2014), *available at* http://tinyurl.com/omvm2qn .......................... 16

Minnesota Intellectual Property Law Association, *Comments
    on Proposed Rules for: Inter Partes Review Proposed Rules*
    (Apr. 10, 2012), http://tinyurl.com/kak7pos ....................................... 16

Eric J. Rogers, *Ten Years of Inter Partes Patent
    Reexamination Appeals: An Empirical View*, 29 Santa
    Clara Computer & High Tech. L. J. 305 (2012) ................................... 9

U.S. Patent & Trademark Office, *Ex Parte (EP) and Inter
    Partes (IP) Proceedings Fiscal Years 2012-2013* (Sept. 30,
    2013), http://tinyurl.com/p8t6er9 ....................................................... 10

U.S. Patent & Trademark Office, *Inter Partes Reexamination
    Historical Statistics*, http://tinyurl.com/mznj938 ................................ 9

## STATEMENT OF RELATED CASES

A.  Pursuant to Federal Circuit Rule 47.5, appellant Synopsys, Inc., identifies *Synopsys v. Mentor Graphics Corp.*, Nos. 14-1516, -1530 (Fed. Cir.), as a related case and respectfully requests that this Court schedule oral argument for that case and the present appeal before the same panel on the same day.

At the heart of the present appeal is the question of whether a Patent & Trademark Office regulation, 37 C.F.R. § 42.108, will be immune from judicial review.  Synopsys brought this action in district court under the Administrative Procedure Act ("APA"), contending that § 42.108 violates the plain text of the America Invents Act ("AIA"). Specifically, Synopsys asserts that § 42.108 violates 35 U.S.C. § 318(a) by allowing the Patent Trial and Appeal Board ("Board") to both grant *inter partes* review petitions in part and to issue final written decisions that address fewer than all of the challenged claims in a granted petition.

The district court held it lacked jurisdiction.  In asserting that the district court lacked jurisdiction, the government argued that this

Court's exclusive review of the Board's final *inter partes* review rulings precludes APA review in the district court.  35 U.S.C. § 141(c).

The related case is just such a challenge to a final *inter partes* review ruling by the Board.  In that case, Synopsys challenges the Board's final written decision in an *inter partes* review where Synopsys is the petitioner challenging the validity of a patent assigned to Mentor Graphics Corporation ("Mentor").  One issue in that appeal is whether the Board erred by failing to issue a final written decision that complies with 35 U.S.C. § 318(a), *i.e.*, that resolves the patentability of "any patent claim challenged by the petitioner."  This appeal, by contrast, presents a direct challenge under the APA to the lawfulness of § 42.108.

Because both the present appeal and the appeal from the Board's final written decision address the PTO's failure to comply with § 318(a), the two cases should be heard together.  Hearing the two cases together will allow this Court to decide whether any type of challenge to the PTO's violation of the statute can be brought or if the PTO's violation will be immune from any judicial review.

B.  Synopsys and Mentor are both parties to another pending appeal from the same *inter partes* review at issue in the related case.

*See Mentor Graphics Corp. v. Lee*, No. 13-1669 (Fed. Cir.).  After the Board instituted, in part, an *inter partes* review, Mentor sued the PTO in the Eastern District of Virginia under the APA challenging the Board's decision to institute.  *Mentor Graphics Corp. v. Rea*, No. 1:13-cv-00518 CMH-TCB (E.D. Va.).  The district court granted the motions to dismiss filed by the PTO and Synopsys (which had intervened) on the ground that 35 U.S.C. § 314(d) barred Mentor's challenge to the merits of the Board's decision to institute review.  Mentor appealed the dismissal to this Court, and that appeal has been stayed pending resolution of *Versata Development Group, Inc. v. Lee*, No. 14-1145 (Fed. Cir.).  *See* Order, *Mentor Graphics Corp. v. Lee*, No. 13-1669 (Fed. Cir. July 30, 2014), ECF No. 37.

## INTRODUCTION

In the America Invents Act ("AIA" or "Act"), Pub. L. No. 112-29,

125 Stat. 284 (2011), Congress created *inter partes* review to provide a

"quick and cost effective alternative[]" to costly patent litigation.

H.R. Rep. No. 112-98, at 48 (2011).  Congress designed the review

process to "force a party to bring all of [its] claims in one forum … and

therefore to eliminate the need to press any claims in other fora."

*See* 154 Cong. Rec. S9989 (daily ed. Sept. 27, 2008) (statement of Sen.

Kyl).  Thus, once the Patent Trial and Appeal Board (the "Board")

grants a petition for *inter partes* review, it must resolve all claims

challenged in the petition by issuing "a final written decision with

respect to the patentability of *any patent claim challenged* by the

petitioner."  35 U.S.C. § 318(a) (emphasis added).  This is key to

allowing *inter partes* review to limit litigation, as opposed to merely

adding another layer of cost and process.  By resolving the petition in

full, the Board's ruling estops further litigation over the patentability of

the claims asserted therein.  *See Id.* § 315(e)(2).  A partial grant of a

petition, however, leaves the validity of the non-instituted claims to be

resolved in litigation, thus, defeating Congress's purpose in enacting the *inter partes* review process.

At issue here is U.S. Patent and Trademark Office ("PTO") regulation 37 C.F.R. § 42.108.  Contrary to 35 U.S.C. § 318(a)—which states the Board "shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner"—the regulation purports to allow the Board to grant review on only a subset of challenged claims and then to issue final written decisions that do not address all of the patent claims challenged by the petitioner.  The Board has freely exercised this counter-statutory regulatory power, including in a petition brought by Synopsys.  Synopsys, thus, brought this action under the Administrative Procedure Act ("APA") in the Eastern District of Virginia, seeking a declaratory judgment that the regulation and practices of issuing partial grants and incomplete final written decisions are invalid.

On the government's motion, the district court dismissed the case for want of jurisdiction.  The government sought to dodge judicial review of the regulation by arguing that 35 U.S.C. § 141(c), which grants this Court exclusive jurisdiction over the Board's final written

decision, and 35 U.S.C. § 314(d), which precludes review of the Board's decision whether to institute review, barred an APA challenge to § 42.108 in district court. But these provisions have no applicability here. Synopsys seeks a ruling on the validity of the PTO's regulation, not a ruling on the validity of any decision made by the Board during an *inter partes* review.

The district court reached the wrong result by failing to appreciate the well-recognized difference between a challenge to the lawfulness of an agency regulation that implements an administrative review program—(what Synopsys challenges here)—and a challenge to an agency's case-specific determination within that administrative program—(what § 314(d) and § 141(c) limit review of). The Supreme Court has repeatedly interpreted statutes with similar structures to permit APA review of agency regulations in district court. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). The considerations that underlie the statutory limitations on review of grant determinations and final Board decisions provide no basis for immunizing PTO regulations from traditional APA review.

3

Despite this, the government claims that Congress prohibited *any* review § 42.108's lawfulness, even where the regulation is contrary to the terms of a statute and undermines the whole point of the statutory *inter partes* review scheme.  In the related case addressing the Board's final written decision, the government claims that this Court lacks jurisdiction to determine the validity of § 42.108 as part of its inquiry into whether the AIA requires the Board to issue a final written decision that addresses all claims Synopsys challenged in its petition. *See* Br. of Intervenor Director of PTO at 15-18, 40-41, *Synopsys v. Mentor*, No. 14-1516 (Fed. Cir.), ECF No. 61 (hereinafter "Br. of Intervenor Director of PTO") ("Synopsys is precluded from obtaining such review by statute.").  Thus, the government takes the "extreme" position that Congress made this PTO regulation unreviewable at any time, in any court, and for any reason. *Michigan Academy*, 476 U.S. at 678.  But Congress did no such thing.  Congress nowhere granted the PTO the power to ignore the terms of the AIA and carte blanche to redesign the *inter partes* review process in a manner contrary to both the language and purpose of the statute.  Supreme Court precedent and the long-established strong presumption of judicial review reject such

an "extreme" position and require rejection of the government's suggestion that no court can review this regulation.

In the APA, Congress grants the courts clear power to adjudicate claims regarding agency regulations and policies that are contrary to statute, as is the case here.  Thus, this Court should reverse the district court's dismissal for want of jurisdiction and permit this APA challenge to § 42.108 to move forward.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702.  The court entered final judgment on October 9, 2014. A24.  On December 2, 2014, Synopsys timely filed its notice of appeal. A593; Fed. R. App. P. 4(a)(1)(B).

This Court has jurisdiction under 28 U.S.C. § 1295(a)(1), which states that "the Federal Circuit shall have exclusive jurisdiction … of an appeal from a final decision of a district court … in any civil action arising under … any Act of Congress relating to patents."  This appeal falls within the scope of § 1295(a)(1) because the civil action here was premised on the argument that the PTO regulation violates the AIA, which is an Act "relating to patents."

5

## STATEMENT OF ISSUES

1. Did the district court err in concluding that Congress intended to foreclose judicial review of Synopsys' APA action seeking a declaration that 37 C.F.R. § 42.108 is contrary to law?

2. Did the district court err in concluding that Synopsys had an "other adequate remedy" to challenge 37 C.F.R. § 42.108, where, as the government argued recently in the related action, Br. of Intervenor Director of PTO at 15-18, 40-41, *Synopsys v. Mentor*, No. 14-1516 (Fed. Cir.), ECF No. 61, no other mechanism provides an opportunity for judicial review of the regulation's validity?

## STATEMENT OF THE CASE

## I. STATUTORY AND REGULATORY BACKGROUND

### A. The Administrative Procedure Act

The Administrative Procedure Act ("APA") entitles an entity "adversely affected or aggrieved by agency action … to judicial review thereof." 5 U.S.C. § 702. APA review is available unless a "statute[] preclude[s] judicial review," *id.* § 701(a)(1), or there is an "other adequate remedy in a court," *id.* § 704. Synopsys challenges PTO regulation 37

C.F.R. § 42.108 under the APA as "not in accordance with law." *Id.*

§ 706(2)(A).[1]

## B.   *Inter Partes* Proceedings

Seeking to limit the growth of patent litigation, in 2011, Congress passed the AIA.  Congress intended for the AIA to provide parties seeking to challenge the validity of issued patents with low-cost and efficient "alternatives" to litigation.  H.R. Rep. No. 112-98, at 48 (2011).  The AIA established new procedures for challenging issued patents and improved upon existing procedures.  At issue in this appeal is a PTO regulation, 37 C.F.R. § 42.108, that implements the AIA's *inter partes* review procedure in a manner contrary to the terms of the Act.

### 1.   The old *Inter Partes* Reexamination process

Prior to the AIA, Congress created a predecessor regime—*inter partes* "reexamination"—to "'make reexamination a viable, less-costly alternative to patent litigation.'"  *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1332 (Fed. Cir. 2008) (quoting 145 Cong. Rec. S13259 (Oct. 27, 1999) (statement of Sen. Hatch)).  *Inter partes* reexamination, however,

---

[1] Synopsys provides the full text of the relevant statutory provisions in the Addendum to this brief.

failed to achieve the ends desired by Congress.  The reexamination process took years to complete, and district judges were often unwilling to stay parallel litigation for an administrative proceeding that was unlikely to "simplify or streamline … litigation."  *Xilinx, Inc. v. Invention Inv. Fund I LP*, Nos. 5:11-cv-671, 5:11-cv-4407 (EJD), 2012 U.S. Dist. LEXIS 170736, *15 (N.D. Cal. Nov. 30, 2012).

In relevant part, *inter partes* reexamination worked as follows.  A party would petition the PTO Director to determine the validity of claims in a patent.  The Director would then determine whether the petition raised any "substantial new question of patentability." 35 U.S.C. § 312(a) (2010).  If the Director determined "that a substantial new question of patentability affecting a claim of a patent" was raised, the Director would "order for inter partes reexamination of the patent for resolution of the question."  *Id.* § 313 (2010).  This Court interpreted "resolution of the question," to limit "[t]he scope of the [*inter partes*] reexamination" to the specific claims and art "that raise a substantial new question of patentability."  *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1383 (Fed. Cir. 2012); s*ee also K/S HIMPP v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1367 (Fed. Cir. 2014).

8

For example, imagine that a patent holder accused a company of infringing claims 1-3 of a patent and that, in response, the company petitioned for *inter partes* reexamination of each claim based on the same prior art reference, say John.  If the Director determined that John only raised a substantial new question of patentability with respect to claim 1, then the *inter partes* reexamination would address only that question.  This would leave the petitioner to resort to litigation to challenge or defend against the other disputed claims based on John.  Given the limited scope of *inter partes* reexamination, district courts granted motions to stay parallel litigation only about 50% of the time.  *See* Eric J. Rogers, *Ten Years of Inter Partes Patent Reexamination Appeals: An Empirical View*, 29 Santa Clara Computer & High Tech. L. J. 305, 320-21 (2012).

*Inter partes* reexamination was also time consuming.  Once the Director instituted reexamination for "resolution of the question," the Act imposed no deadlines on the examiner for resolving the proceeding.  On average, the PTO took over three years to complete *inter partes* reexamination proceedings.  *See* U.S. Patent & Trademark Office, *Inter Partes Reexamination Historical Statistics* 1,

9

http://tinyurl.com/mznj938.  And once the examiner reached a decision,

the patent holder or the petitioner could pursue two levels of appeal:

first, appeal of the examiner's decision to the Board of Patent Appeals

and Interferences, and then appeal of the Board of Patent Appeals and

Interferences' decision to this Court.  35 U.S.C. § 315 (2010).  This could

extend the total time from grant to completion to five years or more.

U.S. Patent & Trademark Office, *Ex Parte (EP) and Inter Partes (IP)*

*Proceedings Fiscal Years 2012-2013* at 10 (Sept. 30, 2013),

http://tinyurl.com/p8t6er9.

## 2.    The America Invents Act's new *Inter Partes* Review process

With the AIA, Congress revamped the *inter partes* reexamination

process and renamed it "*inter partes* review."  Congress intended for

*inter partes* review to "completely substitute for at least the patents-

and-printed publications portion of the civil litigation," 157 Cong. Rec.

S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl), and "limit

unnecessary and counterproductive litigation costs" by "tak[ing] issues

off the table that cannot be resurrected in subsequent litigation,"

S. Rep. No. 110-259 at 52, 71 (Jan. 24, 2008).  To do this, Congress

modified the *inter partes* reexamination procedures in significant ways.

Under the AIA's new *inter partes* review procedure, "a person who is not the owner of a patent" may petition the Patent Trial and Appeal Board (the "Board") "to cancel as unpatentable 1 or more claims of a patent … on a ground that could be raised under [35 U.S.C.] § 102 or 103." 35 U.S.C. § 311(a)-(b).[2]  *Inter partes* review is then "instituted" if the Board determines "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a).

Significantly, in contrast to the old statute governing institution of *inter partes* reexamination, the new *inter partes* review statute omits the critical phrase "resolution of the question" that limited the scope of *inter partes* reexamination to the specific claims and art that satisfied the institution standard.  Instead, Congress made clear that when the Board grants an *inter partes* review petition, the Board "shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner." *Id.* § 318(a).

---

[2] The AIA authorizes the Director of the PTO to institute *inter partes* review proceedings.  Because the Director, by regulation, has delegated this authority to the Board, this brief refers to the Board throughout.  *See* 37 C.F.R. § 42.4.

By resolving the patentability of any claim challenged in a petition, the new *inter partes* review scheme would preclude § 102 and § 103 litigation, at least as to patents and printed publications regarding the patent claims identified in the petition.  That is so because once the Board issues a final written decision addressing all of the claims in the petition, the Act's strict estoppel provisions ensure the *inter partes* review "takes [all of those] issues off the table [so that they] cannot be resurrected in subsequent litigation."  S. Rep. No. 110-259 at 71 (Jan. 24, 2008).  The Act bars a petitioner from filing another *inter partes* review petition or contesting invalidity under § 102 or § 103 in civil litigation based on "any ground that the petitioner raised or reasonably could have raised during that inter partes review."  35 U.S.C. § 315(e)(2); *see* 154 Cong. Rec. S9989 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl) (Congress designed the estoppel provision to "force a party to bring all of [its] claims in one forum … and therefore to eliminate the need to press any claims in other fora").  In this way, Congress designed *inter partes* review to fully resolve "the patents-and-printed publications portion of the civil litigation." 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

In addition to precluding litigation, Congress also made *inter partes* review a much quicker process.  The Board must complete *inter partes* review proceedings in one year, absent good cause for delay.  *See* 35 U.S.C. § 316(a)(11).  And Congress eliminated intermediate review before the Board of Patent Appeals and Interferences.  35 U.S.C. §§ 141(c), 319.

 Further streamlining the *inter partes* review process so that it would provide an effective substitute for litigation, Congress prohibited judicial review of the Board's "determination … whether to institute an inter partes review."  35 U.S.C. § 314(d).  Thus, such decisions whether to institute review are "final and nonappealable."  *Id.*; *see In re Cuozzo Speed Technologies, LLC.*, No. 2014-1301, 2015 U.S. App. LEXIS 1699, at *7, 8 (Fed. Cir. Feb. 4, 2015) (a decision to grant review of a petition is "not subject to further review," including "after issuance of a final decision on patentability"); *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014) (no direct appeal from decision not to institute).[3]

---

[3] This Court has also read § 314(d) to preclude mandamus relief in this Court regarding a Board's decision to institute or not institute *inter*

Finally, Congress channeled all appeals from the Board's "final written decision with respect to the patentability" of the challenged claims to this Court. *See* 35 U.S.C. § 141(c) ("A party to an inter partes review … who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) … may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit").

### C.    The PTO Promulgates 37 C.F.R. § 42.108

On August 14, 2012, the PTO promulgated 37 C.F.R. § 42.108. That regulation authorizes the Board to institute *inter partes* review "on *all or some* of the challenged claims and *on all or some* of the grounds of unpatentability asserted for each claim." 37 C.F.R. § 42.108(a) (emphasis added). Section 42.108(c) also prohibits the Board from instituting *inter partes* review "for a ground of unpatentability unless the Board decides that the petition supporting the ground would

---

*partes* review. *See In re P&G Co.*, 749 F.3d 1376, 1377 (Fed. Cir. 2014) (mandamus relief unavailable to challenge decision to institute); *In re Dominion Dealer Solutions, LLC*, 749 F.3d 1379 (Fed. Cir. 2014) (mandamus relief unavailable to challenge decision not to institute).

demonstrate that there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable." *Id.*

During the notice and comment period, multiple commenters pointed out that the proposed regulation directly conflicted with the AIA's requirements that the Board institute *inter partes* review on all or none of the claims raised in a petitioner's petition and that the Board issue a "final written decision with respect to the patentability of any patent claim challenged by the petitioner." 35 U.S.C. § 318(a). IBM explained that "[t]he statute makes no provisions for reviews which are 'instituted-in-part' or 'dismissed-in-part.'"[4] Put another way, "a review is a review; if the threshold requirement is made, the entire review goes forward and is heard on the merits."[5] The Minnesota Intellectual Property Law Association pointed out that the proposed regulation was "likely to significantly inhibit the utility and frequency of use of these

---

[4] *IBM Corp., Comments regarding "Changes to Implement Inter partes Review Proceeding"* 3 (Apr. 6, 2012), http://tinyurl.com/kzwhvlr.

[5] *Id.*

proceedings by patent litigants, and [was] not likely to fully achieve the intent of Congress in establishing these proceedings."[6]

The PTO recognized that commenters "indicated that instituting review on a claim-by-claim basis" was "potentially at odds with the statute."  77 Fed. Reg. 48,680, 48,702 (Aug. 14, 2012).  But the PTO never attempted to reconcile its regulation with either § 314(a)'s language or § 318(a)'s requirement that the Board's "final written decision" address the "patentability of any patent claim challenged by the petitioner."  *See* 77 Fed. Reg. at 48,698.  Instead, the PTO responded that allowing it to grant petitions in part and then issue final decisions that respond to less than all of the claims asserted in the petition would "aid[] in the efficient operation of the Office."  *Id.*

Pursuant to this regulation, the Board has instituted *inter partes* review on only a subset of requested claims on well over one hundred occasions.  *See* Brian J. Love & Shawn Ambwani, *Inter Partes Review: An Early Look at the Numbers*, 81 U. Chi. L. Rev. Dialogue 93, 100 (2014), *available at* http://tinyurl.com/omvm2qn.  And on numerous

---

[6] Minnesota Intellectual Property Law Association, *Comments on Proposed Rules for: Inter Partes Review Proposed Rules* 3 (Apr. 10, 2012), http://tinyurl.com/kak7pos.

occasions, the PTO has issued final written decisions that fail to address all patent claims "challenged by the petitioner."  35 U.S.C. § 318(a),

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Synopsys

Founded more than 25 years ago, Synopsys has been and remains an innovator in semiconductor design technologies.  Synopsys has developed numerous patented innovations and owns over 2,200 patents.  As a leader in this dynamic market, Synopsys is also a repeat player before the Board and in the *inter partes* review process.  Synopsys is currently involved in eight *inter partes* review proceedings.[7]  And, given

---

[7] Petition for Inter Partes Review,  *ATopTech, Inc., v. Synopsys, Inc.*, IPR2014-01160 (PTAB July 11, 2014), Paper No. 2; Petition for Inter Partes Review, *ATopTech, Inc., v. Synopsys, Inc.*, IPR2014-01159 (PTABJuly 11, 2014), Paper No. 2; Petition for Inter Partes Review, *ATopTech, Inc., v. Synopsys, Inc.*, IPR2014-01150 (PTAB July 11, 2014), Paper No. 2; Petition for Inter Partes Review, *ATopTech, Inc., v. Synopsys, Inc.*, IPR2014-01153 (PTAB July 11, 2014); Petition for Inter Partes Review, *ATopTech, Inc., v. Synopsys, Inc.*, IPR2014-01145 (PTAB July 11, 2014); Petition for Inter Partes Review, *Mentor Graphics Corp. v. Synopsys, Inc.*, IPR2014-00287 (PTAB December 13, 2013), Paper No. 1; Petition for Inter Partes Review, *Synopsys, Inc., v. Mentor Graphics Corp.*, IPR2012-00041 (PTAB September 26, 2012), Paper No. 1; Petition for Inter Partes Review by *Synopsys, Inc., v. Mentor Graphics Corp.*,IPR2012-00042 (PTAB September 26, 2012).

its significant number of patents and the competitiveness of the
integrated circuit design industry, it will likely be a frequent
participant in future *inter partes* reviews.  Synopsys has a significant
interest in ensuring that the PTO carries out the *inter partes* review
process in a manner consistent with the statute and that the process
provides the cost-effective alternative to litigation that Congress
intended.

To further establish its standing to challenge the regulation,
Synopsys alleged in its complaint that the Board had exercised its
§ 42.108 power in regard to an *inter partes* review petition submitted by
Synopsys, which resulted in the Board issuing a final written decision
that failed to address all of the claims raised in the petition.  *See* A34-35
¶¶ 16, 19.

## B.    Synopsys Challenges 37 C.F.R. § 42.108 Under The Administrative Procedure Act

Synopsys filed this APA action in the Eastern District of Virginia,
challenging the lawfulness of 37 C.F.R. § 42.108.  Synopsys argued that
the AIA unambiguously requires the Board to initiate *inter partes*
review on, and resolve the patentability of, either all or none of the
claims in a petitioner's petition.  Specifically, Synopsys asserted that

18

§ 318's mandate to the Board to "issue a final written decision with respect to the patentability *of any patent claim challenged by the petitioner*" forecloses the PTO from authorizing the Board to both conduct partial *inter partes* review and to issue final written decisions that fail to address all claims challenged by the petitioner. 35 U.S.C. § 318(a) (emphasis added); *see* A37, 39 ¶¶ 27, 34, 38. Synopsys further explained that § 314 contemplates initiating or denying *inter partes* review on all claims by basing the decision to initiate on whether "the information *presented in the petition* … shows that there is a reasonable likelihood that the petitioner would prevail with respect to *at least 1* of the claims *challenged in the petition*." 35 U.S.C. § 314(a) (emphasis added); *see* A36 ¶ 26.

## C.  The District Court's Decision

The district court dismissed Synopsys' complaint for lack of jurisdiction. It held that the AIA precluded judicial review of APA claims in the district courts. A22. The district court recognized that the "plain language of the statute does not affirmatively vest, nor does it affirmatively preclude, such judicial review in this Court." A15-16. Yet the court said that because "Congress intended to vest the Federal

Circuit with exclusive jurisdiction over judicial review of post-grant patentability decisions made by the Board on behalf of the Director," A10, Synopsys could only attempt to challenge the PTO's regulation by appealing a final written decision in an *inter partes* review.  A14-15, 18. Although the court acknowledged that Synopsys brought a "narrow challenge to the [PTO's] regulation ... as opposed to the merits of substantive decisions made by the [Board]," the court concluded that it nonetheless did "not have jurisdiction to consider Synopsys' narrow challenge."  A17-18.

As an "alternative ground for dismissal," the court concluded that "the AIA provides an alternative adequate remedy in the Federal Circuit, thus barring judicial review in" the district court.  A21 (capitalization omitted).  The court, however, made no determination that Synopsys, or any party, could challenge § 42.108 in the Federal Circuit or in any other forum.[8]

---

[8] As the district court recognized, the merits of the challenge to the regulation were not briefed or properly before the court in regard to its resolution of the ruling on the motion to dismiss for want of jurisdiction.  A15 n.6 (the merits to the challenge to the regulation are "not pertinent to the Court's ... determining whether judicial review is precluded").  Without any briefing on the merits, however, the court

Synopsys then filed this appeal, challenging the dismissal of the APA action for want of jurisdiction.

## SUMMARY OF THE ARGUMENT

I.  The Administrative Procedure Act permits persons "adversely affected or aggrieved by agency action" to challenge that agency action in federal court.  5 U.S.C. § 702.  Courts presume that Congress intended to make APA review available absent "clear and convincing evidence" of congressional intent to the contrary.  No evidence of such intent exists here.  As the district court recognized, nowhere does the AIA's text preclude judicial review of the PTO regulations that govern *inter partes* review.  And, the Supreme Court has long recognized that Congress intends to permit APA review of an agency's *administration* of

---

questioned whether § 318(a)'s reference to "any patent claim challenged by the petitioner" means "all patent claims challenged by the petitioner."  *Id.*  (internal quotation marks omitted).  On remand, Synopsys will fully brief the issue and explain to the court why its doubts about the reading of § 318(a) are without merit and why judgment should be entered for the plaintiff.  *See, e.g.*, Opening Brief & Addendum of Appellant Synopsys, Inc. at 70-71, *Synopsys, Inc. v. Mentor Graphics Corp.*, Nos. 14-1516, 14-1530 (Fed. Cir.), ECF No. 34 (explaining why "any" as used in § 318(a) is properly read as "all" (citing *Barsebäck Kraft AB v. United States*, 121 F.3d 1475, 1481 (Fed. Cir. 1997))).

a specialized administrative process even where Congress limits review of the *merits* of the specific decisions the agency makes within that administrative process. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991); *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986).

That is exactly the claim Synopsys brings here. Synopsys challenges a PTO regulation—37 C.F.R. § 42.108—that undermines Congress's carefully crafted statutory *inter partes* review process. The district court reached the wrong result by failing to even consider the Supreme Court cases that establish this distinction. *See* A17-18. Congress had no reason to insulate from judicial review the PTO's improper administration of Congress's carefully designed *inter partes* review process.

II. The district court also erred when it concluded that the AIA provided an "other adequate remedy." It is the government's position that Synopsys cannot bring its challenge to § 42.108 in any forum whatsoever. A21; Br. of Intervenor-Director of PTO at 15-18, 40-41 ("Synopsys is precluded from obtaining such review by statute."). This Court should reject the PTO's remarkable claim that its regulations are

wholly unreviewable by any court, even when they are contrary to a statute. The PTO's actions must be reviewable in some forum. *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988). If review of § 42.108 is unavailable in Synopsys' direct appeal from a final written decision (as the government contends in that related case), this APA action is the proper method for Synopsys, or any aggrieved party, to challenge § 42.108. Thus, the district court's dismissal for want of jurisdiction should be reversed, and Synopsys should be permitted to proceed with its challenge to the legality of § 42.108.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal of an APA claim for lack of subject matter jurisdiction. *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1354 (Fed. Cir. 2012).

## ARGUMENT

### I.    CONGRESS DID NOT BAR APA CHALLENGES TO PTO REGULATIONS THAT ARE CONTRARY TO LAW

Absent "a showing of clear and convincing evidence of ... legislative intent" to "restrict access to judicial review," *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (internal quotation marks omitted), courts are required to presume "that Congress intend[ed] judicial

23

review of administrative action" under the APA. *Michigan Academy*, 476 U.S. at 670. The "clear and convincing evidence" standard is a "reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (internal quotation marks omitted). This is because it "'has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified.'" *Michigan Academy*, 476 U.S. at 671 (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945) (Senate Judiciary Committee Report on the Administrative Procedure Act)).

Here, there is no evidence—much less evidence that is clear and convincing—that Congress intended to preclude judicial review of regulations that the PTO promulgates to implement Congress's newly enacted *inter partes* review statutory scheme. Indeed, the plain language of the AIA, as well as its structure and legislative history, show that Congress intended to permit APA review of PTO regulations inconsistent with the AIA. § I.A (pp. 25-33). The district court's

24

contrary decision contravenes longstanding and well-settled Supreme Court authority holding that APA review remains available to challenge agency regulations and procedures that govern specialized review proceedings, like *inter partes* review. § I.B (pp. 33-40). And, judicial review of PTO regulations, such as § 42.108, furthers Congress's intent in enacting the AIA by ensuring that *inter partes* review actually becomes the substitute for patent validity litigation Congress intended. § I.C (pp. 40-46).

### A.   The AIA's Plain Text, Structure, And Legislative History Evince No Clear Intent To Preclude APA Review Of PTO Regulations

The "Administrative Procedure Act … embodies the basic presumption of judicial review." *Abbott Labs.*, 387 U.S. at 140. In the APA, Congress provided a clear default rule that all federal regulations are subject to judicial review under the APA *unless* Congress in a separate statute affirmatively "*preclude[s]* judicial review." 5 U.S.C. § 701(a)(1) (emphasis added); *see also Abbott Labs.*, 387 U.S. at 141 ("only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review"

under the APA).  In the AIA, Congress expressed no intent to preclude review of PTO regulations relating to *inter partes* review.

The district court itself recognized that the AIA's "plain language" does not "affirmatively preclude … judicial review [of Synopsys' APA challenge]" in district court.  A15-16.  Section 316, which directs the PTO Director to "prescribe regulations" governing the "[c]onduct of inter partes review," says nothing about precluding or limiting judicial review of such regulations for conformity with the AIA.  35 U.S.C. § 316.  And no other provision of the Act limits challenges to § 42.108 or any other PTO regulation.  Thus, the express language of the AIA provides no clear and convincing evidence of an intent to preclude judicial review under the APA to challenge § 42.108 as being contrary to law.

Nor can a court properly find clear and convincing evidence that Congress intended to implicitly preclude such review.  Finding clear and convincing evidence of an implied intent to preclude APA review is a high bar.  *Michigan Academy*, 476 U.S. at 680-81.  Here there is no evidence of such an intent that would even come close.  Congress has shown in the AIA that it knows how to expressly curtail judicial review

when it wants to do so.  Yet it nowhere did so for APA review of PTO regulations.

Exhibit one is § 314(d).  Section 314(d) bars review of Board "determinations" as to whether to institute *inter partes* review. Congress made clear that such "determination[s]" are "final and nonappealable."  35 U.S.C. § 314(d).  This language provides the requisite "clear and convincing evidence" that Congress precluded any court from reviewing the Board's discretionary, case specific "determination" whether or not to grant a petition to institute review in a particular case.[9]  *See In re Cuozzo*, No. 2014-1301, 2015 U.S. App. LEXIS 1699, at *7-8 (Fed. Cir. Feb. 4, 2015).

But in so doing, Congress explicitly barred review of only "a single act"—the determination whether to institute—"rather than a group of decisions or a practice or procedure employed in making decisions."  *See McNary*, 498 U.S. at 491-92.  Consistent with its aim of keeping the process efficient and streamlined, Congress precludes challenges to the

---

[9] For this reason, when Mentor Graphics filed an APA action seeking review of the Board's specific affirmative decision to institute *inter partes* review of one of its patents, Synopsys correctly argued that § 314(d) foreclosed review of that case-specific decision.  *See Mentor Graphics Corp. v. Rea*, No. 1:13-cv-00518 CMH-TCB (E.D. Va.).

decision whether to grant a particular *inter partes* review petition.  If the Board grants the petition, § 314(d) ensures that the Board can proceed with the *inter partes* review and promptly issue a final written decision addressing any claim challenged in the petition (as required by 35 U.S.C. § 318(a)).  And if the Board denies the petition, the parties may resume litigating patent validity in the district court.  Nothing in § 314(d)'s text or purpose bars a challenge to a regulation that addresses the *inter partes* review process; § 314(d) bars only challenges to case-specific determinations whether to institute review.[10]

Exhibit two is § 141(c).  That provision channels appeals of the Board's "final written decision with respect to the patentability of any patent claim challenged by the petitioner," 35 U.S.C. § 318(a), "only to" this Court, *id.* § 141(c).  This language provides the requisite "clear and

---

[10] At oral argument in the district court, the government noted that Synopsys' prayer for relief, in addition to seeking a declaration that the regulation and practice it authorizes is contrary to statute, also requested the district court to order the Board to issue a proper final written decision with respect to the patentability of all claims challenged by Synopsys in its petition for *inter partes* review of the '376 patent.  *See* A41.  Even, assuming *arguendo* the government's position that a district court could not issue such relief in an APA action, that would have no bearing on the district court's jurisdiction to hear the remainder of Synopsys' APA challenge.  Indeed, Synopsys' first four prayers for relief are directed solely at the validity of § 42.108.  *Id.*

convincing evidence" that Congress limited review of a specific agency action—the Board's final written decision in a specific *inter partes* review—to a direct appeal to this Court.  But that section does not speak to, much less contemplate, precluding an APA challenge to an entirely different agency action—the PTO's promulgation of a regulation that violates the AIA.[11]

Sections 314(d) and 141(c) demonstrate that when Congress wants to preclude or limit judicial review for matters relating to the AIA, it does so directly.  It does not "hide elephants in mouseholes."  *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).  That Congress expressly limited review of Board determinations made during *inter partes* reviews, and has not done so with PTO regulations promulgated

---

[11] Because the Government has argued that the only court that could possibly hear this claim would be this Court on direct appeal from a Board final written decision, A574-75, Synopsys has asserted a similar challenge in Synopsys' direct appeal from the Board's final written decision in *Synopsys v. Mentor*, Nos. 14-1516, -1530 (Fed. Cir.). In the brief filed in that direct appeal, Synopsys argues that Board's failure to issue a final written decision that addressed all of the claims violated the terms of the AIA.  Opening Brief & Addendum of Synopsys, Inc. at 68-76, ECF No. 34.  The government has responded by arguing that this Court lacks jurisdiction to consider this argument both in the APA case and in the direct appeal from the Board's final decision.  *See* Br. of Intervenor Director of PTO at 15-18, 40-41.

pursuant to § 316, strongly suggests that Congress had no intent to preclude APA review here. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (internal quotation marks omitted)); *Cook v. Principi*, 318 F.3d 1334, 1339 & n.6 (Fed. Cir. 2002) ("Applying the familiar canon of expressio unius est exclusio alterius," *i.e.*, that "the expression of one thing is the exclusion of another" (internal quotation marks omitted)).

"[H]ad Congress intended the[se] limited review provisions[, *i.e.* § 314(d) and § 141(c)] … to encompass challenges to [PTO and Board] procedures and practices, it could easily have used broader statutory language." *McNary*, 498 U.S. at 494. Instead, Congress only limited and channeled review of the Board's case-specific and fact-based "determination" to institute and the Board's case-specific and fact-based final written decision. Given the strong presumption of judicial review and the dramatic consequences of cutting off all judicial review of an agency regulation, more is required to preclude review.

Notably, in enacting the AIA, Congress legislated in a context where the courts already exercised jurisdiction under the APA to review PTO *inter partes* reexamination regulations. For example, in *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1334 (Fed. Cir. 2008), Cooper Techs—a patent holder in an *inter partes* reexamination proceeding—"brought suit against the Director of the Patent Office in the U.S. District Court for the Eastern District of Virginia, challenging the Patent Office's interpretation [of a provision of the *inter partes* reexamination statute] under the Administrative Procedure Act." Notwithstanding the fact that Cooper Techs challenged a regulation that governed *inter partes* reexamination proceedings and that an analogue to § 141(c) was in effect, both the district court and this Court resolved the APA case on the merits, without any suggestion that Congress precluded APA challenges to the validity and lawfulness of PTO regulations. *See id.*, 536 F.3d 1330; *Cooper Techs. Co. v. Dudas*, No. 1:07cv853 (LMB/BRP), 2007 U.S. Dist. LEXIS 88046 (E.D. Va., Nov. 30, 2007). Even though the Board's final rulings on *inter partes* reexamination were channeled exclusively to this Court, 35 U.S.C. § 141

(2010), this Court, in cases like *Cooper Technologies*, saw no impediment to district court review of PTO regulations under the APA.

Congress enacted the AIA against this background. As this Court recently recognized interpreting the AIA, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *In re Cuozzo*, 2015 U.S. App. LEXIS 1699 at *18; *see also Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580 (1978). Congress's decision to pass the AIA without imposing any new restriction on judicial review of PTO regulations strongly suggests that Congress did not intend to foreclose APA review of PTO regulations implementing the AIA.

As we detail further in the next section, it is commonplace for Congress to restrict and channel court review of fact-bound, case-specific agency determinations, while not precluding APA challenges to an agency regulation or policy. *See McNary*, 498 U.S. at 491-92. Synopsys' challenge falls into the latter category. Synopsys asserts here that the PTO regulation authorizing partial grants of *inter partes* review petitions violates the plain statutory terms of § 314(a) and

§ 318(a). These sections nowhere authorize partial *inter partes* review and instead require a final written decision regarding all claims challenged by the petitioner. There is no evidence, or even suggestion, that Congress intended § 314(d) or § 141(c) to bar challenges, like Synopsys', to PTO regulations that purport to authorize the Board to act in a manner specifically foreclosed by statute.

**B.    The Supreme Court Has Long Recognized That APA Review Is Available To Challenge An Agency's Administration Of Specialized Review Proceedings**

That Congress limited review of certain case-specific determinations made during individual *inter partes* review proceedings in no way suggests that Congress intended to preclude APA review of a challenge to a PTO regulation. Congress's decision to channel such case-specific disputes to a particular court is unremarkable and says nothing as to where challenges to agency regulations and policies should be brought. Indeed, in multiple decisions, the Supreme Court has recognized that when Congress creates a specific administrative review scheme, it intends to limit judicial review of case-and-fact-specific decisions made under the scheme, but does *not* intend to preclude review under the APA of the regulations and procedures that

33

govern the process.  *See McNary*, 498 U.S. at 494; *Michigan Academy*, 476 U.S. at 675-76.  Without any justification, the district court failed to even consider these long established precedents.  *See* A17-18 ("Synopsys relies on *McNary v. Haitian Refugee Center* … and *Bowen v. Michigan Academy* … [b]ut this argument must be raised before the Federal Circuit.").  Had the district court properly considered these precedents, it would have been clear to the court that there was no basis to find an implied congressional intent to preclude APA review of PTO regulations.

In *McNary v. Haitian Refugee Ctr., Inc.,* the Supreme Court held on facts strikingly similar to this case that Congress did not preclude APA review of agency regulations in district court.  498 U.S. 479 (1991).  In that case, immigrants who unsuccessfully applied for a congressionally created amnesty program filed an APA action in district court alleging that the Immigration and Naturalization Service ("INS") was making "determinations" of eligibility in an unlawful manner.  Despite an Immigration and Nationalization Act ("INA") provision stating that "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under

34

this section except … [as part of] judicial review of an order of exclusion or deportation under section 1105a of this title," 8 U.S.C. § 1160(e)(1), (e)(3)(A), the Supreme Court held that this language did not foreclose APA review of the procedures the INS employed in rendering such determinations. *McNary*, 498 U.S. at 494.

In so ruling, the Court emphasized the important distinction between a challenge to a specific "determination" regarding a person's status, and a broader challenge to the lawfulness of the agency's policies and practices. The Supreme Court explained that the government's "entire jurisdictional argument rest[ed] on [the] view that" the immigrants' challenge to the INA's regulations sought "judicial review of a determination respecting an application for adjustment of status." *Id.* at 491 (internal quotation marks omitted). But that was not the case because the plaintiffs were challenging the "practices and policies used by the agency in processing applications." *Id* at 492. Relying on the strong presumption in favor of judicial review, the Court reasoned that the Act's "reference to 'a determination' describe[d] a single act rather than a group of decisions or a practice or procedure employed in making decisions." *Id.* Because, like Synopsys, the plaintiffs in

35

*McNary* challenged the agency's practices and procedures rather than the merits of a specific "determination," the Act did not bar their APA challenge. *Id.* at 493-94.

So too in *Michigan Academy*. That case concerned an APA action seeking review of the HHS regulations governing Medicare benefit determinations. Even though Congress created a statutory scheme that "carefully detail[ed] the forum and limits of review of 'any determination … of … the amount of benefits,'" the Supreme Court held that the review bar did not foreclose an APA challenge to the lawfulness of the agency regulations that establish the methods and procedures for calculating benefits. 476 U.S. at 675 (quoting 42 U.S.C. § 1395ff(b)(1)(C) (1982 ed., Supp. II)). Again embracing the strong presumption of judicial review, the Court found that the statute limiting review "simply does not speak to challenges mounted against *the method* by which such amounts are to be determined rather than the determinations themselves." *Id.* at 675-76 (emphasis added). In so holding, the Court rejected what it referred to as the government's "extreme" position that Congress "intended that there be no forum to

adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary." *Id.* at 678, 680 (emphasis omitted).

Here, just like in *McNary* and *Michigan Academy*:

- The government's "entire jurisdictional argument rests on their view that [Synopsys'] … challenge is an action seeking judicial review of a determination … rather than a group of decisions or a practice or procedure employed in making decisions." *McNary*, 498 U.S. at 491-92; *see also Michigan Academy*, 476 U.S. at 675-76 (emphasis omitted) (holding language barring review of benefit determinations "simply does not speak to challenges mounted against the method by which such amounts are to be determined"). Synopsys challenges a Board regulation, not a determination.

- The government maintains that a statutory scheme forecloses judicial review even though review within the scheme "does not address," *McNary*, 498 U.S. at 493, "the legality, constitutional or otherwise, of any provision of the Act or regulations," *Michigan Academy*, 476 U.S. at 675-76.

*See* Br. of Intervenor Director of PTO at 15-18, 40-41 (no review as part of final written decision).

- And the government takes the "extreme" and "implausible" position that Congress precluded the PTO's regulation from review by any mechanism. *Michigan Academy*, 476 U.S. at 678, 680. *See* Br. of Intervenor Director of PTO at 15-18, 40-41.

Thus, had the district court properly taken *McNary* and *Michigan Academy* into account, it would have been compelled to exercise jurisdiction over Synopsys' APA challenge to § 42.108.

This Court's decision in *Pregis Corp. v. Kappos*, 700 F.3d 1348 (Fed. Cir. 2012), which the district court relied upon, only further highlights why the AIA is not properly read to preclude review here. *Pregis* falls within a long line of decisions requiring parties to challenge administrative action within congressionally designed procedures when those procedures accommodate challenges to the agency action at issue. *See id.* at 1358 (distinguishing cases in which "preclusion of a suit under the APA would leave an agency action entirely free from judicial review"); *Cmty. Nutrition Inst.*, 467 U.S. at 352 (finding preclusion

38

where administrative scheme provided forum to "challenge unlawful agency action and to ensure that the statute's objectives will not be frustrated"); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 211, 215 (1994) ("persuasive evidence that Congress intended to direct ordinary challenges under the Mine Act to a single review process"; all "statutory and constitutional claims … can be meaningfully addressed in the Court of Appeals" on appeal from review process).

Accordingly, in *Pregis*, this Court found that Congress precluded a company from challenging, under the APA, the PTO's decision to grant a patent because Congress "considered and addressed the need for review of PTO patentability determinations" by providing multiple avenues for challenging such decisions—*inter partes* reexamination, declaratory judgment actions, and raising invalidity as a defense in district court infringement litigation. 700 F.3d at 1358. Unlike in *Pregis*, however, the government argues that Congress provided no alternative mechanism for judicial review of the lawfulness of PTO regulations that govern the Board's administration of the *inter partes* review process. *See Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852, 861 (D.C. Cir. 2007) (precluding review "'would not lead to a

channeling of review through the agency, but would mean no review at all'" (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 17 (2000)).

Notably, the PTO does *not* contend that Congress provided an alternative mechanism for review of PTO regulations that implement the *inter partes* review process. Rather, the PTO asserts that the regulation is *never* subject to judicial review, even if it is directly contrary to statute. No APA review. No review within any specialized statutory scheme. No review in this Court. The bottom line, in the government's view, is that the lawfulness of 37 C.F.R. § 42.108 is forever immune from judicial review. This is just the type of "extreme" position that the Supreme Court found untenable in *Michigan Academy,* 476 U.S. at 678. For the same reasons, the government's position is untenable here.

### C.   APA Review Of The PTO's Regulation Is Required To Fulfill Congress's Intent To Make *Inter Partes* Review An Alternative To Litigation

As discussed above (at 7-14), Congress designed *inter partes* review to fix key defects in the prior *inter partes* reexamination process. The prior *inter partes* reexamination scheme failed in large part

because it created a lengthy and piecemeal process for resolving validity challenges that did not provide a real and effective "alternative" to expensive patent litigation. *Inter partes* reexamination proceedings often resolved the patentability of only a subset of claims in dispute and took a long time to do so. As a result, district courts saw little reason to stay parallel litigation. Instead of simplifying and streamlining patent disputes, this left the litigants to contest a patent simultaneously in district court and in the administrative process. And even when the Board review ended in cancellation of some claims, the petitioner could persist with invalidity challenges to any noninstituted claims in court.

Congress sought to remedy these perceived deficiencies with the AIA. There would be no more partial resolutions of a petition or extensive delays. Rather, under the new *inter partes* review process, the Board is now required by statute to resolve the patentability of "*any* patent claim challenged by the petitioner." 35 U.S.C. § 318(a) (emphasis added). This requirement, coupled with the AIA's strict estoppel provisions, makes *inter partes* review a comprehensive streamlined substitute for the § 102 and § 103 phase of patent litigation. And because *inter partes* review can now actually take "the

41

patents-and-printed publication" issues completely "off the table,"

S. Rep. No. 110-259 at 71 (Jan. 24, 2008), it provides a real incentive for

courts and litigants to stay parallel litigation while the *inter partes*

review process plays out.  157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011)

(statement of Sen. Kyl).

By promulgating § 42.108, however, the PTO has thwarted this

essential purpose of the AIA.  Instead of granting petitions in full and

resolving any claim asserted in the petition, the regulation allows the

Board to pick and choose among claims to review and to issue final

written decisions that resolve only some of the claims.  The unresolved

claims remain fodder for litigation in court.  Accordingly, district courts

are denying motions to stay parallel litigation where the Board grants

partial *inter partes* review because, in such cases, review cannot replace

or even meaningfully simplify litigation.[12]  The regulation at issue here,

---

[12] *E.g.*, *Invensys Sys. v. Emerson Elec. Co.*, No. 6:12-cv-00799, 2014 U.S. Dist. LEXIS 128454, at *10 (E.D. Tex. July 25, 2014) (denying motion to stay where Board institute review in part because "any simplification [would] likely to be minimal"); *U.S. Nutraceuticals LLC v. Cyanotech Corp.*, No. 5:12-cv-366-Oc-10PRL, 2013 U.S. Dist. LEXIS 163057, at *8 (M.D. Fla. Oct. 15, 2013) (recommending denial of motion to stay pending *inter partes* review) ("[I]t is now certain that the IPR will not address Claims 16-20, 23-25, and 27…. It is now clear that this

thus, frustrates the AIA's central purpose of making *inter partes* review an efficient substitute for civil litigation.

Permitting APA review of PTO regulations furthers the AIA's purpose by ensuring that the PTO implements the *inter partes* review process in conformity with the AIA.  If, as the government argues, no one can challenge § 42.108, it will stay on the books and continue to thwart Congress's central purpose in enacting the AIA.  It is absurd to believe that Congress intended such a result.  Having just revised the *inter partes* reexamination process in ways that limited the Board's discretion, *supra* pp. 7-14, Congress had every incentive to ensure that the PTO did not "construe the statute in a way that completely nullifies [the] provisions meant to limit its discretion."  *Whitman*, 531 U.S. at 485; *see also Michigan Academy*, 476 U.S. at 671 ("It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the

---

case will proceed on numerous claims regardless of the outcome of the USPTO proceeding."), *adopted by U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 2013 U.S. Dist. LEXIS 163054, at *2 (M.D. Fla. Nov. 15, 2013) ; *Xilinx, Inc. v. Invention Inv. Fund I LP*, Nos. 5:11-cv-00671-EJD, 5:11-cv-04407-EJD, 2012 U.S. Dist. LEXIS 170736,  at *4 (N.D. Cal. Nov. 30, 2012) (same; *inter partes* reexamination).

objectives specified."). If Congress truly intended to immunize the PTO regulations that govern *inter partes* review from all judicial review, as the government contends, then Congress would have effectively given the PTO carte blanche to revert back to the *inter partes* reexamination procedures that Congress had just spent years revising. That would make no sense.

The district court erred in suggesting that APA review of the regulation at issue here would be contrary to the congressional aim of having a streamlined and efficient *inter partes* review process. The court feared that APA review would undermine "the efficiency of the post-grant patentability review process" by "effectively creat[ing] a bifurcated judicial review system, where district courts … adjudicate some post-grant patentability claims, while other claims could be appealed directly to the Federal Circuit." A16-17. To be sure, in the very short run, the absence of judicial review is more efficient for the PTO than having to defend its regulation. But beyond that very short-term parochial benefit, allowing the regulation to persist adds no efficiency or benefit to the process *Congress* created. Indeed, it

threatens the efficiency and viability of the new *inter partes* review

scheme by replacing it with a scheme contrary to Congress's design.

Moreover, the Supreme Court has clearly instructed the courts *not*

to consider such parochial efficiency arguments in deciding whether to

hear an APA claim.  The Supreme Court has recently admonished that

the "APA's presumption of judicial review is a repudiation of the

principle that efficiency of regulation conquers all."  *Sackett v. EPA*, 132

S.Ct. 1367, 1374 (2012).  Thus, the district court's efficiency

considerations were improper and cannot support its refusal to assert

jurisdiction over the APA challenge to the regulation here.

Furthermore, the court's asserted concern about a bifurcated

process for review of post-grant patentability claims is misplaced.  The

primary relief Synopsys seeks is programmatic and not case-specific.

This issue will be decided *once* and will then apply in all *inter partes*

review proceedings.  There will be no drawn-out "bifurcated" process for

review.  *Michigan Academy*, 476 U.S. at 680 n.11.  Granting such APA

review will not compromise the *inter partes* review process.  Rather, it

will strengthen the process by making it the reliable substitute for

litigation that Congress intended.  Requiring a comprehensive decision,

as Congress contemplated, will lead to full estoppel with respect to all of a petitioner's claims.  That will help eliminate the dual-track litigation that was the Achilles' heel of the prior reexamination scheme.

And there is nothing unusual about resolving programmatic challenges to PTO regulations in one forum while resolving fact-specific questions of patentability in another.  The former are pure questions of federal law traditionally resolved by judges that apply to all cases, while the latter are mixed questions of law and fact that benefit from the Board's expertise.  "[P]ermitting [APA] review only [of] … a particular statutory or administrative standard … [will] not result in a costly flood of litigation, because the validity of a standard can be readily established, at times even in a single case." *Michigan Academy*, 476 U.S. at 681 n.11 (internal quotation marks omitted).

## II.   NO OTHER ADEQUATE REMEDY EXISTS FOR CHALLENGING 37 C.F.R. § 42.108

The district court also erred in concluding that it lacked jurisdiction to consider Synopsys' APA action because Synopsys had an "other adequate remedy" available that precludes APA review.  5 U.S.C. § 704.  The government has taken the position that the lawfulness of § 42.108 is not reviewable by any other mechanism.  *See* Br. of

Intervenor Director of PTO at 15-18, 40-41 (no review as part of final written decision). If the government's position prevails, then Synopsys, or any other litigant, will have no means by which to challenge the regulation's validity. Common sense and Supreme Court precedent make clear that the absence of review of an agency action is not an "other adequate remedy" for challenging such action. 5 U.S.C. § 704.

In order to avoid "duplicat[ion of]" remedies," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988), Congress limited APA review to review of "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704. For this exception to foreclose APA review, another adequate remedy must, at a minimum, exist. Accordingly, in *Bowen v. Massachusetts*, the Supreme Court rejected the government's argument that an adequate remedy existed where it was "doubtful" that the alternative forum afforded "any review" of the plaintiff's claim. 487 U.S. at 904-05. Although an adequate remedy need not be "'as effective as an APA lawsuit,'" *Pregis*, 700 F.3d at 1360 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009)), a review mechanism is inadequate if it "offers only 'doubtful and limited relief.'" *Garcia*, 563 F.3d at 523 (quoting *Bowen v. Massachusetts*, 487 U.S. at

901).  Under a straightforward application of *Bowen v. Massachusetts*,
Synopsys has no "other adequate remedy," if, as the government
maintains, Synopsys has no other mechanism for challenging whether
§ 42.108 violates the AIA.  *See* Br. of Intervenor Director of PTO at 15-
18, 40-41.

Although the district court concluded that Synopsys had an
adequate alternative remedy available in an appeal from a "final
written decision in an *inter partes* review proceeding," the court made
no determination that Synopsys could in fact challenge § 42.108
through that mechanism.  A22.  If, of course, this Court concludes, in
Synopsys' direct appeal from the final written decision, that Synopsys
can address the validity of this regulation in that matter, we would
readily agree that review under 35 U.S.C. § 141(c) provides an adequate
substitute that precludes APA review.  The government has argued,
however, that no review of the regulation is permitted under § 141(c).
*See* Br. of Intervenor Director of PTO at 15-18, 40-41 (characterizing
Synopsys' challenge as, "in effect," a prohibited "challenge to the
institution decision").  *See also St. Jude Med.*, 749 F.3d at 1375 (§ 141(c)
review limited to the "final written decision").  If the government is

48

right, then it is hard to understand how review under § 141(c) provides a meaningful adequate remedy for a party seeking to challenge the validity of a PTO regulation.

The district court believed it irrelevant whether the lawfulness of the regulation could be reviewed under § 141(c). *Id.* In so holding, the court cited *Pregis*'s pronouncement that "a judicial remedy is adequate … so long as it offers relief of the same genre." A22 (quoting *Pregis*, 700 F.3d at 1360 (internal quotation marks omitted)). The district court, however, made no effort to explain how the complete absence of review of the validity of the PTO regulation could equate to "relief of the same genre."

Nothing in *Pregis* supports the district court's conclusion that providing no judicial review of a regulation can be considered an adequate alternative remedy for a party seeking to challenge the validity of the regulation. In *Pregis*, this Court found that an adequate remedy precluded Pregis's APA suit challenging a PTO patentability determination in a context where ample alternatives abounded. Indeed, Congress provided "*three different*" avenues "for competitors harmed by the PTO's erroneous issuance of a patent … [to attain] review, in an

Article III court, of the validity of patents issued by the PTO." 700 F.3d at 1360 (emphasis added). In other words, Congress provided three different mechanisms for challenging the specific agency action at issue: the PTO's issuance of a patent.

In contrast, here, on the government's view, Congress provided no method for challenging the PTO's regulation for the putative implementation of the AIA. The AIA provides a remedy for challenging specific *inter partes* review determinations made by the Board. It does not, however, provide an adequate remedy for programmatic challenges to the validity of a PTO regulation.

Under the district court's expansive reasoning, the APA's reference to an "other adequate remedy" would preclude all review of agency regulations wherever Congress creates specialized procedures for adjudicating case-specific disputes that relate to the same subject matter as the agency's regulations. Such a rule is flatly inconsistent with the APA's "central purpose of providing a broad spectrum of judicial review of agency action," *Bowen v. Massachusetts*, 487 U.S. at 903, with the presumption of reviewability, *see Sackett*, 132 S.Ct. at 1373, and with the numerous cases that permit APA review of

50

agency action even where Congress created a specialized review process. *See, e.g.*, *McNary*, 498 U.S. at 494; *Michigan Academy*, 476 U.S. at 675-76.

* * *

This Court must decide whether 37 C.F.R. § 42.108 can ever be challenged as being inconsistent with both the text and purpose of the AIA. This Court should follow *McNary* and *Michigan Academy* and reverse the district court's decision that it lacked jurisdiction to review the lawfulness of § 42.108 under the APA. In the alternative, the Court should hold that Synopsys can challenge the regulation on review of the Board's final written decision to the extent that the Board's decision fails to address all of the claims raised in the petition. But, in no event, should this Court embrace the government's "extreme" view that § 42.108 should forever be immunized from judicial review.

## CONCLUSION

For the foregoing reasons, the judgment of the district court

should be reversed.

Respectfully submitted,

/s/ Robert M. Loeb

I. Neel Chatterjee
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Andrew D. Silverman
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Robert M. Loeb
Eric A. Shumsky
Jeremy Peterman
Orrick, Herrington & Sutcliffe LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400
rloeb@orrick.com

*Counsel for Plaintiff-Appellant*

March 5, 2015

# TABLE OF CONTENTS

## ADDENDUM

Memorandum Opinion, Dated October 9, 2014 (DKT 44)..............A1-A23

Order, Dated October 9, 2014 (DKT 45) ............................................. A24

## STATUTORY ADDENDUM

5 U.S.C. § 701 ..................................................................... Ad1

5 U.S.C. § 704 ..................................................................... Ad2

5 U.S.C. § 706 ..................................................................... Ad3

35 U.S.C. § 141 ................................................................. Ad4-5

35 U.S.C. § 314 ................................................................... Ad6

35 U.S.C. § 315 ................................................................. Ad7-8

35 U.S.C. § 316 ............................................................... Ad9-10

35 U.S.C. § 318 .............................................................. Ad11-12

35 U.S.C. § 319 ................................................................. Ad13

37 C.F.R. § 42.108 ............................................................. Ad14

# Memorandum and Opinion, Dated October 9, 2014 (DKT 44)

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SYNOPSYS, INC.,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )   1:14cv674 (JCC/IDD)
                                   )
MICHELLE K. LEE, Deputy Under      )
Secretary of Commerce for          )
Intellectual Property and          )
Deputy Director of the United      )
States Patent and Trademark        )
Office, serving in the Acting      )
Capacity as Director of the        )
United States Patent and           )
Trademark Office, et al.,          )
                                   )
        Defendants.                )

**M E M O R A N D U M   O P I N I O N**

Plaintiff Synopsys, Inc. ("Synopsys") filed this
declaratory judgment action pursuant to the Administrative
Procedure Act ("APA") against Defendants Michelle K. Lee, the
Deputy Under Secretary of Commerce for Intellectual Property and
Deputy Director of the United States Patent and Trademark Office
("USPTO"), serving in her acting capacity as Director of the
USPTO ("the Director"), and the USPTO (together with the
Director, collectively, "Defendants").  This matter comes before
the Court on the Defendants' Motion to Dismiss pursuant to Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure
("Motion").  [Dkt. 20]

1

**A1**

Defendants' Motion concerns this Court's jurisdiction to review a USPTO post-patent-grant patentability decision. The issue before the Court is whether the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, precludes this Court's review of a USPTO decision to institute "partial" inter partes review proceedings, and to ultimately issue a final written decision on some, but not all, of the challenged claims originally raised by the petitioner. The Court holds that it lacks jurisdiction to review Plaintiff's APA claims because Congress vested exclusive jurisdiction over such judicial review in the United States Court of Appeals for the Federal Circuit. For the reasons discussed below, the Court will dismiss Synopsys's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## I. Background

On May 29, 2001, the USPTO granted Patent Number 6,240,376 ("the '376 patent") to assignee Mentor Graphics Corporation ("Mentor"), an intervening Defendant in this matter. (Compl. [Dkt. 1] ¶¶ 13, 14; Order Granting Mot. to Intervene [Dkt. 25].) Under the AIA, there are two administrative mechanisms by which the USPTO reviews the patentability of issued patents: inter partes review, 35 U.S.C. §§ 311-319, and post-grant review, 35 U.S.C. §§ 321-329. On September 26, 2012, Synopsys filed a petition for inter partes review of the '376

2

**A2**

patent challenging claims 1-15 and 20-33 of the '376 patent as allegedly "invalid due to anticipation (lack of novelty) and obviousness." (Compl. ¶ 15.)

On February 22, 2013, the Patent Trial and Appeal Board ("the Board") granted Synopsys's petition for inter partes review, but only as to claims 1-9, 11, 28, and 29, because the Board found that Synopsys had "demonstrated that there is a reasonable likelihood of prevailing on its challenge to the patentability [of those claims]." (Compl. ¶ 16; Institution of Inter Partes Review ("Institution Decision") [Dkt. 1-3] at 43.) The Board did not institute inter partes review proceedings as to the remaining claims challenged by Synopsys: 10, 12-15, 20-27, and 30-33. (Compl. ¶ 17; Institution Decision at 43.)

On April 29, 2013, Mentor, the owner of the patent, filed suit against the USPTO in this Court. Mentor sought (1) judicial review of the Board's decision to institute partial inter partes review and (2) to enjoin the partial inter partes review proceeding. Synopsys intervened in that lawsuit as a defendant, opposed Mentor's requested relief, and filed a motion to dismiss, as did USPTO. The Court granted the motion to dismiss. The Court found, first, that the Board's decision to institute inter partes review was not a final agency decision and thus not reviewable under the APA. Second, the Court found that it lacked jurisdiction to review the Board's decision because

3

**A3**

Mentor had another adequate remedy available in the Federal Circuit. See Mentor Graphics Corp. v. Rea, No. 1:13-cv-518, 2013 WL 3874522 (E.D. Va. July 25, 2013).

The Board issued the final written decision on Synopsys's inter partes petition on February 19, 2014 and cancelled claims 5, 8, and 9 of the '376 patent as unpatentable. (Compl. ¶ 18.) Otherwise, the Board found that Synopsys failed to show that claims 1-4, 6, 7, 11, 28, 29, were unpatentable, and did not address Synopsys's challenge to claims 10, 12-15, 20-27, and 30-33. (Id. ¶¶ 18, 19.) On April 22, 2014, Synopsys noticed an appeal of the Board's final written decision to the Federal Circuit.[1] (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") Ex. C [Dkt. 21-3].) On June 5, 2014, Synopsys filed this Complaint, alleging Defendants violated the APA. (Compl. ¶¶ 23-40.)

Specifically, Synopsys claims that the Director exceeded the statutory authority prescribed by Congress in 35 U.S.C. §§ 314(a), 318(a) when she promulgated 37 C.F.R. § 42.108 ("the regulation"), which authorizes the Board to institute inter partes review "on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each

---

[1] This appeal has been stayed, pending the outcome of the appeal in Versata v. Lee, where Plaintiff appealed this Court's dismissal, which held that the AIA precludes judicial review under the APA of the decision to initiate post-grant review. Versata Dev. Corp. v. Rea, 959 F. Supp. 2d 912, 923-26 (E.D. Va. 2013). Versata is scheduled for oral argument in the Federal Circuit on October 8, 2014.

**A4**

claim." (Compl. ¶ 32.)  Synopsys argues that under AIA, if the Board "determined that Synopsys had a reasonable likelihood of success as to at least one claim challenged in the petition . . . the Board was required to institute inter partes review of the petition as a whole . . . [and] issue a written decision that addresses the patentability of all claims challenged by the petition, not just a subset of those claims." (Id. ¶ 30 (citing 35 U.S.C. §§ 314(a), 318(a)).)  By partially granting petitions for inter partes review, and by issuing final written decisions that only address some, but not all, of the petitioner's challenged claims, Synopsys contends that the Director acted unlawfully in excess of statutory authority.[2]  For relief, Synopsys asks this Court to declare the regulation, and any actions taken in accordance with the regulation, including the final written decision, invalid pursuant to 5 U.S.C. § 706. Synopsys also asks for a declaration that the Board may only grant or deny inter partes petitions in whole, and only issue final written decisions that address all challenged claims raised by the petitioner.  (Id. ¶¶ 32, 36, 38, 40, at 11.)

Defendants argue that the Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because this Court is without jurisdiction to consider those

---

[2] Synopsys also claims that Defendants acted arbitrarily and contrary to law in violation of 5 U.S.C. § 706(2)(A), and refused to observe the procedure required by the AIA in violation of 5 U.S.C. § 706(2)(D).  (Compl. ¶¶ 23-40.)

**A5**

claims. Synopsys filed a memorandum in opposition to Defendants'

Motion, (Pl.'s Opp'n. [Dkt. 24].), and Defendants replied,

(Defs.' Reply [Dkt. 28].). Thus, the Motion is fully briefed and

ripe for disposition.[3]

## II.  Standard of Review

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs the

dismissal of an action where the Court lacks subject matter

jurisdiction. Defendants may attack subject matter jurisdiction

in one of two ways. First, defendants may contend that the

allegations in the complaint are insufficient to show that the

federal district court has jurisdiction over the subject matter

of the case. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.

1982); King v. Riverside Reg'l Med. Ctr., 211 F. Supp. 2d 779,

780 (E.D. Va. 2002). In such instances, all facts alleged in the

complaint are presumed true. Adams, 697 F.2d at 1219; Virginia

v. United States, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue, as is the case

here, that the jurisdictional facts alleged in the complaint are

untrue. Adams, 697 F.2d at 1219; King, 211 F. Supp. 2d at 780.

---

[3] On September 4, 2014, non-party SAS Institute, Inc. filed a motion for leave
to file an amicus curiae brief in support of Synopsys's position, [Dkt. 30].
The Court granted the motion during oral argument on September 11, 2014, and
set a briefing schedule for Defendant's response and SAS Institute, Inc.'s
reply. The additional briefing is now complete and was considered by the
Court. See Tafas v. Dudas, 511 F. Supp. 2d 652, 659 (E.D. Va. 2007) ("The
Court has broad discretion in deciding whether to allow a non-party to
participate as an amicus curiae."); see also [Dkts. 30, 40, 41].

**A6**

Stated differently, defendants may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings," White v. CMA Const. Co., Inc., 947 F. Supp. 231, 233 (E.D. Va. 1996) (citations omitted), and claim that the district court actually lacks jurisdiction over the subject matter, an independent defect that may exist even with sufficient pleading. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" Virginia v. United States, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993)).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams, 697 F.2d at 1219; see also Johnson v. Portfolio Recovery Assocs., 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

B.  Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion

tests the legal sufficiency of the complaint.  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff.  See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

### III. Analysis

The APA "is not a jurisdiction-conferring statute." Dominion Dealer Solutions, LLC v. Lee, No. 3:13-cv-699, 2014 WL 1572061, at *2 (E.D. Va. Apr. 18, 2014) (quoting Lee v. Citizenship and Immigration Servs., 592 F.3d 612, 619 (4th Cir. 2010)) (additional citations omitted).  The "APA confers a general cause of action to obtain judicial review of agency action through the mechanism of 5 U.S.C. § 702 . . . [but] the jurisdictional source for an action under the APA is the federal question statute, which confers jurisdiction on federal courts to review agency action."  Dominion Dealer Solutions, 2014 WL 1572061 at *2 (internal quotation marks and additional citations omitted).  Under the APA, "[a]ny person adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof, as long as the action is a final agency action for which there is no other adequate remedy in a court."  Heckler v. Chaney, 470 U.S. 821, 828 (1985) (internal citations and quotations

8

**A8**

omitted).  But this general cause of action comes with
limitations.

Before the Court can review a final agency action under
the APA, the aggrieved party seeking review must "first clear the
hurdle of § 701(a)," id., which states in pertinent part that
judicial review applies "except to the extent that statutes
preclude judicial review." 5 U.S.C. § 701(a)(1); see also City of
Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958) ("It can
hardly be doubted that Congress, acting within its constitutional
powers, may prescribe the procedures and conditions under which,
and the courts in which, judicial review of administrative orders
may be had.").  This limitation can "effectively strip the
federal courts of jurisdiction and provide valid grounds for a
Rule 12(b)(1) motion."  Dominion Dealer Solutions, 2014 WL
1572061 at *2 (citing Wade v. Blue, 36 F.3d 407, 411 n.2 (4th
Cir. 2004) ("[A] specific limitation of federal court
jurisdiction . . . overrides the general grant of federal
jurisdiction [in the federal question statute].")).

Section 701(a)(1) "requires construction of the
substantive statute involved to determine whether Congress
intended to preclude judicial review of certain decisions."
Heckler, 470 U.S. at 828.  "[T]he ultimate analysis is always one
of Congress' intent."  S. Ry. Co. v. Seaboard Allied Milling
Corp., 442 U.S. 444, 454 (1979); see also Dunlop v. Bachowski,

9

**A9**

421 U.S. 560, 567 (1975) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967) ("Only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review."))(internal quotations and additional citations omitted).  While there is a presumption that favors judicial review of administrative action, "[t]his presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984). Congress's intent to preclude judicial review "is determined not only from its express [statutory] language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  Id. at 345.

Here, the Court examines the AIA to determine whether Congress intended to preclude judicial review of inter partes review proceedings in this Court.  As discussed in more detail below, the express statutory language and the legislative history of the AIA show by clear and convincing evidence that Congress intended to vest the Federal Circuit with exclusive jurisdiction over judicial review of post-grant patentability decisions made by the Board on behalf of the Director.  To conclude otherwise

would defeat Congress's intent to improve the efficiency of the post-grant patentability review process.

## A. The AIA Precludes Judicial Review

"To determine whether a particular statute precludes judicial review, we look to its express language, the structure of the statutory scheme, its legislative history and purpose, and the nature of the administrative action involved." Pregis Corp. v. Kappos, 700 F.3d 1348, 1357-58 (Fed. Cir. 2012) (citing Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984)). The Court begins its analysis with the plain language used by Congress in the AIA.

The Director is tasked with "prescrib[ing] regulations" for conducting inter partes review, see generally 35 U.S.C. § 316(a), including regulations that "establish[] and govern[] inter partes review under this chapter and the relationship of such review to other proceedings under this title." Id. § 316(a)(4). "[A] person who is not the owner of a patent may file with the [USPTO] a petition to institute an inter partes review of the patent." 35 U.S.C. § 311. Among other requirements, the petitioner must identify in writing each claim challenged, and the grounds for the challenge with evidentiary support. Id. § 312(a). After giving the owner of the patent an opportunity to respond to the petition, id. § 313, the Director first must make the threshold determination of whether to institute inter partes

11

**A11**

review proceedings.  Specifically,

> [t]he Director may not authorize inter partes
> review to be instituted unless the Director
> determines that the information presented in
> the petition . . . and any response filed . .
> . shows that there is a reasonable likelihood
> that the petitioner would prevail with
> respect to at least 1 of the claims
> challenged in the petition.

Id. § 314(a).  This determination "whether to institute an inter

partes review under this section shall be final and

nonappealable."  Id. § 314(d).

"If an inter partes review is instituted and not

dismissed under this chapter, the [Board][4] shall issue a final

written decision with respect to the patentability of any patent

claim challenged by the petitioner and any new claim added under

section 316(d)."  Id. § 318(a).  And while the threshold decision

to institute inter partes review is final and nonappealable, "[a]

party to an inter partes review or a post-grant review who is

dissatisfied with the final written decision of the [Board] . . .

may appeal the Board's decision only to the United States Court

of Appeals for the Federal Circuit."  Id. §§ 141(c), 319.

Defendants argue that Congress created a carefully

calibrated statutory scheme governing the procedures for how an

inter partes review decision may be challenged in court: "only

final written decisions on patentability may be challenged, 35

---

[4] "The Patent Trial and Appeal Board shall, in accordance with section 6,
conduct each inter partes review instituted under this chapter."  35 U.S.C. §
316(c).

**A12**

U.S.C. § 319; decisions to initiate inter partes review may <u>not</u> be challenged, <u>id.</u> § 314(d); final decisions may be challenged only in the Federal Circuit, <u>id.</u> § 141(c); and any party may appeal, <u>id.</u>"  (Defs.' Mem. at 14-15 (emphasis in original).)[5]

In response, Synopsys acknowledges that Congress expressly precluded judicial review on the merits of the Director's decision whether to grant inter partes review in section 314(d), and precluded this Court's judicial review on the merits of the Board's final written decision in section 141(c), but argues that the statute does not preclude review of its claim: "a challenge to a USPTO regulation regarding the process for inter partes review."  (Pl.'s Opp'n at 17-18.)  Synopsys claims "[n]o evidence suggests that Congress sought to immunize from review the type of challenge to the USPTO's regulation and practices [of instituting partial inter partes review and issuing partial final written decisions] at issue here."  (<u>Id.</u> at 17.)

The "preeminent canon of statutory interpretation requires [courts] to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'"  <u>BedRoc Ltd., LLC v. United States</u>, 541 U.S. 176, 183

---

[5] Synopsys raised a similar, if not identical, argument when it intervened as a defendant in Mentor's lawsuit last year, Case No. 1:13-cv-518, which was ultimately dismissed, 2013 WL 3874522.  (Defs.' Mem. at 14-15 (citing Intervenor-Def. Synopsys's Mem. in Supp. of the Mot. to Dismiss and Cross-Mot. for Summ. J. [Dkt. 21-1]).)  Synopsys attempts to distinguish this challenge from Mentor's lawsuit, arguing "Mentor sought review of the merits of a decision by the Board to institute proceedings.  Review of such claims is expressly barred. Synopsys's Complaint, in contrast, is not directed to the merits of the Board's action."  (Pl.'s Opp'n at 7-8.)

(2004) (quoting <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54
(1992)).  In the AIA, Congress explicitly barred appeals from the
threshold determination to institute inter partes review.  <u>See</u> 35
U.S.C. § 314(d) ("The determination by the Director . . . shall
be final and nonappealable."); <u>see</u> <u>also</u> <u>Versata Dev. Corp. v.</u>
<u>Rea</u>, 959 F. Supp. 2d 912, 923-26 (E.D. Va. 2013) (holding the AIA
precludes judicial review under the APA of the decision to
initiate post-grant review).  And Congress clearly vested
judicial review of final agency action exclusively in the Federal
Circuit: "A party to an inter partes review . . . who is
dissatisfied with the final written decision of the [Board] . . .
may appeal the Board's decision <u>only</u> to the . . . Federal
Circuit."  35 U.S.C. §§ 141(c), 319 (emphasis added).

     Here, Synopsys is dissatisfied with the Board's final
written decision.  More precisely, first, it is dissatisfied that
the Board only instituted inter partes review on some of its
challenged claims.  But this threshold determination is not
appealable or reviewable under the plain language of the statute.
35 U.S.C. § 314(d).  Second, Synopsys is dissatisfied with the
Board's final written decision, because the Board only addressed
and ultimately canceled some, but not all, of the challenged

claims.[6]  As a party that is dissatisfied with the final written

decision, the statute clearly dictates that Synopsys's appeal

lies only with the Federal Circuit.  In other words, because only

final agency action is reviewable under the APA, Flue-Cured

Tobacco Cooperative Stabilization Corp. v. United States

Environmental Protection Agency, 313 F.3d 852, 857 (4th Cir.

2002) ("Other than agency action made specifically reviewable by

statute, § 704 limits the APA's non-statutory right of judicial

review to final agency action." (citing 5 U.S.C. § 704), and

because the plain language of the statute vests exclusive

jurisdiction over judicial review of the Board's final written

decision in the Federal Circuit, 35 U.S.C. §§ 141(c), 319, this

Court is precluded from reviewing the appeal.

     Recognizing this plain mandate of Congress, Synopsys

narrowly frames its claim in an attempt to create jurisdiction in

this Court.  Specifically, Synopsys challenges the regulation

that authorizes partial inter partes review proceedings and

partial final written decisions.  The plain language of the

---

[6] Under 35 U.S.C. § 318(a), if inter partes review is instituted, the "Board
shall issue a final written decision with respect to the patentability of any
patent claim challenged by the petitioner and any new claim added under
section 316(d)." Synopsys interprets the statutory provision "any patent
claim challenged by the petitioner" to mean "all patent claim[s] challenged by
the petitioner." (Pl.'s Opp'n at 15.) ("The practice denies the petitioner the
statutory right under [] 35 U.S.C. § 318(a) to a written decision as to all of
its claims and, relatedly, deprives the petitioner of the right to judicial
review of the Board's decision regarding the patentability of certain
challenged claims."). While not pertinent to the Court's instant analysis in
determining whether judicial review is precluded, the Court notes that "any"
in the context of "any patent claim challenged by the petitioner" is plainly
defined as "[o]ne, some, every, or all without specification." The American
Heritage Dictionary 83 (Anne H. Soukhanov et al. eds., 3d ed. 1992).

statute does not affirmatively vest, nor does it affirmatively preclude, such judicial review in this Court. But in consideration of "the structure of the statutory scheme, its legislative history and purpose, and the nature of the administrative action involved," Pregis, 700 F.3d at 1357-58 ("A statute need not explicitly state that judicial review is unavailable for preclusion to be found.") (citation omitted), the Court finds that Congress intended to preclude the type of judicial review that Synopsys seeks. This outcome is supported by the AIA's plain language and legislative history.

By enacting the AIA, Congress intended to improve the efficiency of the post-grant patentability review process. See H.R. Rep. No. 112-98(I), at 39 (2011) ("The legislation is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."). In furtherance of this goal, Congress intended parties to only appeal inter partes review decisions directly to the Federal Circuit. See 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) ("The bill also eliminates intermediate administrative appeals of inter partes proceedings to the BPAI, instead allowing parties to only appeal directly to the Federal Circuit."). It is clear that Congress intended the AIA to produce "a more effective and efficient patent system," Id. at S1361 (statement of Sen. Leahy)

16

**A16**

("The last extensive reform of our patent system was nearly 60 years ago. It is time.").

If the Court were to deny Defendants' Motion, the Court would effectively create a bifurcated judicial review system, where district courts could adjudicate some post-grant patentability claims, while other claims could be appealed directly to the Federal Circuit. Such a system is contrary to the plain statutory language and inefficient, directly the opposite of what Congress intended when enacting the AIA. The legislative history simply does not support such an outcome, and other courts have looked upon bifurcated judicial review systems with disfavor when Congress has created a special statutory review procedure. See City of Rochester v. Bond, 603 F.2d 927, 936 (D.C. Cir. 1979) ("The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the courts of appeals."). Allowing Synopsys's Complaint to continue would defeat Congress's clear intent.

Nonetheless, Synopsys argues that this Court can review its narrow challenge to the Defendants' regulation and practice in accordance with the regulation, as opposed to the merits of substantive decisions made by the Defendants. (Pl.'s Opp'n at 18-23.) For support, Synopsys relies on McNary v. Haitian Refugee Center, 498 U.S. 479 (1991) and Bowen v. Michigan Academy of

17

**A17**

Family Physicians, 476 U.S. 667 (1986), where the Supreme Court "distinguished between suits seeking a substantive decision on the merits of the agency's determination regarding particular claims and those that challenge an agency's practices and policies . . . ." (Pl.'s Opp'n at 19-20.)  But this argument must be raised before the Federal Circuit, the Court with exclusive jurisdiction over Synopsys's appeal of the final written decision.  Stated differently, this Court does not have jurisdiction to consider Synopsys's narrow challenge.  See St. Jude Medical, Cardiology Div., Inc. v. Volcano Corp., 749 F.3d 1373, 1374 (Fed. Cir. 2014) ("The final written decision is the only decision that the statute authorizes a dissatisfied party to appeal to this court.").

Moreover, Synopsys claims that the AIA is crafted to favor the proposed judicial review that it seeks, but cites no statutory language or legislative history in support, (Pl.'s Opp'n at 21.), likely because the legislative history, discussed above, does not favor judicial review in this Court.  Cf. Dominion Dealer Solutions, 2014 WL 1572061, at *6 ("The AIA is a young statute, and Congress has not yet taken the opportunity to signal its approval or disapproval of any judicial gloss on the [inter partes review] revisions.  But the legislative history for the AIA itself does not indicate a statutory scheme that would disfavor preclusion; if anything, the legislative history offers

18

**A18**

mild support to the notion that a decision to deny [inter partes review] is precluded from judicial review."). Instead, Synopsys argues only that if judicial review is denied here, "there will be no check on the agency." (Id.) That argument contradicts the plain language and structure of the statute. "It can hardly be doubted that Congress . . . may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958) (emphasis added). The AIA provides that dissatisfied parties to inter partes review may only appeal to the Federal Circuit.[7] Congress designed AIA's statutory framework to promote efficiency and safeguard the rights of patent owners. 157 Cong. Rec. S1361-62 ("It will improve and harmonize operations at the PTO; it will improve the quality of patents that are issued; and it will provide more certainty to litigation.") (daily ed. Mar. 8, 2011) (statement of Sen. Leahy). The statutory procedure for inter partes review and direct appeal only to the Federal Circuit promotes this desired efficiency.

Lastly, Federal Circuit precedent also supports this outcome. Shortly after the enactment of the AIA, the Federal

---

[7] Alternatively, as discussed in more detail infra, sec. III.B., "a judicial remedy is adequate for purposes of 5 U.S.C. § 704 even if it does not 'provide relief identical to the relief under the APA, so long as it offers relief of the 'same genre.'" Pregis Corp. v. Kappos, 700 F.3d 1348, 1360 (Fed. Cir. 2012) (quoting Garcia v. Vilsack, 563 F.3d 519, 523 (D.C. Cir. 2009)).

Circuit opined on an analogous issue of statutory preclusion of
APA claims under the Patent Act.  Even though the AIA did not
govern the appeal, the Federal Circuit explicitly stated:

> Because at all times relevant to this appeal
> the provisions of the AIA governing post-
> grant review had not yet taken effect, this
> opinion discusses the Patent Act as it
> existed prior to the AIA.  Nevertheless, the
> fact that Congress has prescribed detailed
> new procedures for administrative and
> judicial review of issued patents <u>reinforces
> the conclusion that Congress intended to
> preclude other avenues of judicial review</u>.

<u>Id.</u> at 1358 n.1 (emphasis added).  "[T]he carefully balanced
framework of the Patent Act specifies a well-defined process for
how, when, where, and by whom [US]PTO patentability
determinations may be challenged."  <u>Pregis Corp. v. Kappos</u>, 700
F.3d 1348, 1359 (Fed. Cir. 2012).  In <u>Pregis</u>, among other issues,
the Federal Circuit affirmed this Court's dismissal of Pregis's
APA claims for lack of subject matter jurisdiction, finding the
Patent Act precluded judicial review of patentability decisions
under the APA.  <u>Id.</u> at 1357-59.  The Federal Circuit found that
Congress created "several mechanisms by which third parties may
challenge the [US]PTO's decision to issue a patent," and that
this "carefully balanced framework" precluded judicial review in
this Court for claims brought under the APA.  <u>Id.</u> at 1358-59.
The Federal Circuit's analysis is instructive and leads to the
logical conclusion here that Congress precluded Synopsys's

20

**A20**

proposed judicial review under the APA in this Court.

The Court finds the AIA's plain language and the
legislative history demonstrates by clear and convincing evidence
that Congress intended to preclude this Court from reviewing
inter partes proceedings under the APA, 5 U.S.C. § 701(a)(1).
Therefore, the Court will dismiss the Complaint pursuant to Rule
12(b)(1) of the Federal Rules of Civil Procedure.  See Dominion
Dealer Solutions, 2014 WL 1572061 at *2 ("These limitations have
the potential to effectively strip the federal courts of
jurisdiction and provide valid grounds for a Rule 12(b)(1)
motion.") (citing Wade v. Blue, 36 F.3d 407, 411 n.2 (4th Cir.
2004)).

B. Alternative Ground for Dismissal

Alternatively, even if Synopsys cleared the hurdle of
section 701(a)(1), which it did not, the Court finds that the AIA
provides an alternative adequate remedy in the Federal Circuit,
thus barring judicial review in this Court.  See 5 U.S.C. § 704.
Synopsys argues that it cannot challenge the regulation and
partial institution of inter partes review on appeal to the
Federal Circuit because that court "has been strict in adhering
to the rule and, accordingly, rejects any claim that goes beyond
the four corners of the 'final written decision.'"  (Pl.'s Opp'n
at 23 (citing St. Jude Med., Cardiology Div., Inc. v. Volcano
Corp., 749 F.3d 1373, 1374 (Fed. Cir. 2014) ("[T]he final written

21

**A21**

decision is the only decision that the statute authorizes a dissatisfied party to appeal [to the Federal Circuit].")).)  However, "a judicial remedy is adequate for purposes of 5 U.S.C. § 704 even if it does not 'provide relief identical to the relief under the APA, so long as it offers relief of the 'same genre.'" Pregis Corp. v. Kappos, 700 F.3d 1348, 1360 (Fed. Cir. 2012) (quoting Garcia v. Vilsack, 563 F.3d 519, 523 (D.C. Cir. 2009)).

The scope of the Federal Circuit's judicial review does not modify or somehow alter Congress's grant of exclusive jurisdiction to that court.  Synopsys's argument is properly addressed to the Federal Circuit, the only court with jurisdiction over an appeal from the final written decision in an inter partes review proceeding.  Because an adequate alternative remedy is available, the Court would dismiss the Complaint on this basis in the alternative.  Mentor Graphics Corp. v. Rea, No. 1:13-cv-518, *3 (E.D. Va. July 25, 2013) ("Congress has chosen an adequate alternative remedy allowing for direct Federal Circuit review at the culmination of the [Board] proceedings to streamline the review process while maintaining the parties' full rights to judicial review.").

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.

An appropriate Order shall issue.

22

**A22**

/s/
_____

October 9, 2014                    James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE

# Order, Dated October 9, 2014 (DKT 45)

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SYNOPSYS, INC.,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )     1:14cv674 (JCC/IDD)
                                         )
MICHELLE K. LEE, Deputy Under            )
Secretary of Commerce for               )
Intellectual Property and               )
Deputy Director of the United           )
States Patent and Trademark             )
Office, serving in the Acting           )
Capacity as Director of the             )
United States Patent and                )
Trademark Office, et al.,                )
                                         )
        Defendants.                      )

## O R D E R

        For the reasons stated in the accompanying Memorandum
Opinion, it is hereby ORDERED that:

        (1) Defendants Michelle K. Lee and the United States
Patent and Trademark Office's Motion to Dismiss [Dkt. 20] is
GRANTED; and

        (2) The Clerk of the Court shall forward copies of this
Order and accompanying Memorandum Opinion to all counsel of
record.

        THIS ORDER IS FINAL.

                                    _____
                                            /s/
October 9, 2014                      James C. Cacheris
Alexandria, Virginia         UNITED STATES DISTRICT COURT JUDGE

**A24**

# 5 U.S.C. § 701

resentatives'' for ''the committees on the Judiciary of the Senate and the House of Representatives, the Select Committee on Small Business of the Senate, and the Committee on Small Business of the House of Representatives'', was executed by making the substitution for ''the Committees on the Judiciary of the Senate and House of Representatives, the Select Committee on Small Business of the Senate, and the Committee on Small Business of the House of Representatives'' to reflect the probable intent of Congress.

Subsec. (b). Pub. L. 104–121, §243(b)(2), substituted ''his or her views with respect to compliance with this chapter, the adequacy of the rulemaking record with respect to small entities and the'' for ''his views with respect to the''.

### CHANGE OF NAME

Committee on Small Business of Senate changed to Committee on Small Business and Entrepreneurship of Senate. See Senate Resolution No. 123, One Hundred Seventh Congress, June 29, 2001.

### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–121 effective on expiration of 90 days after Mar. 29, 1996, but inapplicable to interpretative rules for which a notice of proposed rulemaking was published prior to Mar. 29, 1996, see section 245 of Pub. L. 104–121, set out as a note under section 601 of this title.

## CHAPTER 7—JUDICIAL REVIEW

Sec.
701.    Application; definitions.
702.    Right of review.
703.    Form and venue of proceeding.
704.    Actions reviewable.
705.    Relief pending review.
706.    Scope of review.

### SHORT TITLE

The provisions of sections 551 to 559 of this title and this chapter were originally enacted by act June 11, 1946, ch. 423, 60 Stat. 237, popularly known as the ''Administrative Procedure Act''. That Act was repealed as part of the general revision of this title by Pub. L. 89–554 and its provisions incorporated into sections 551 to 559 of this title and this chapter.

## § 701. Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) ''agency'' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix; and

(2) ''person'', ''rule'', ''order'', ''license'', ''sanction'', ''relief'', and ''agency action'' have the meanings given them by section 551 of this title.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 103–272, §5(a), July 5, 1994, 108 Stat. 1373; Pub. L. 111–350, §5(a)(3), Jan. 4, 2011, 124 Stat. 3841.)

### HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| (a) ............. | 5 U.S.C. 1009 (introductory clause). | June 11, 1946, ch. 324, §10 (introductory clause), 60 Stat. 243. |

In subsection (a), the words ''This chapter applies, according to the provisions thereof,'' are added to avoid the necessity of repeating the introductory clause of former section 1009 in sections 702–706.

Subsection (b) is added on authority of section 2 of the Act of June 11, 1946, ch. 324, 60 Stat. 237, as amended, which is carried into section 551 of this title.

In subsection (b)(1)(G), the words ''or naval'' are omitted as included in ''military''.

In subsection (b)(1)(H), the words ''functions which by law expire on the termination of present hostilities, within any fixed period thereafter, or before July 1, 1947'' are omitted as executed. Reference to the ''Selective Training and Service Act of 1940'' is omitted as that Act expired on Mar. 31, 1947. Reference to the ''Sugar Control Extension Act of 1947'' is omitted as that Act expired on Mar. 31, 1948. References to the ''Housing and Rent Act of 1947, as amended'' and the ''Veterans' Emergency Housing Act of 1946'' have been consolidated as they are related. The reference to former section 1641(b)(2) of title 50, appendix, is retained notwithstanding its repeal by §111(a)(1) of the Act of Sept. 21, 1961, Pub. L. 87–256, 75 Stat. 538, since §111(c) of the Act provides that a reference in other Acts to a provision of law repealed by §111(a) shall be considered to be a reference to the appropriate provisions of Pub. L. 87–256.

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

### REFERENCES IN TEXT

Sections 1891–1902 of title 50, appendix, referred to in subsec. (b)(1)(H), were omitted from the Code as executed.

### AMENDMENTS

2011—Subsec. (b)(1)(H). Pub. L. 111–350 struck out ''chapter 2 of title 41;'' after ''title 12;''.

1994—Subsec. (b)(1)(H). Pub. L. 103–272 substituted ''subchapter II of chapter 471 of title 49; or sections'' for ''or sections 1622,''.

## § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be

# 5 U.S.C. § 704

dicial review may be brought against the United States, the agency by its official title, or the appropriate officer as defendant.

### § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ................ | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, §10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ................ | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, §10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ................ | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, §10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof, that: "This Act [see Tables for classification] shall not be construed to repeal or modify any provision of the Administrative Procedure Act [see Short Title note set out preceding section 551 of this title]."

## CHAPTER 8—CONGRESSIONAL REVIEW OF AGENCY RULEMAKING

Sec.
801.    Congressional review.
802.    Congressional disapproval procedure.
803.    Special rule on statutory, regulatory, and judicial deadlines.
804.    Definitions.
805.    Judicial review.
806.    Applicability; severability.
807.    Exemption for monetary policy.
808.    Effective date of certain rules.

### § 801. Congressional review

(a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

# 5 U.S.C. § 706

dicial review may be brought against the United States, the agency by its official title, or the appropriate officer as defendant.

### § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| ................ | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, §10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| ................ | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, §10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
| --- | --- | --- |
| ................ | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, §10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof, that: "This Act [see Tables for classification] shall not be construed to repeal or modify any provision of the Administrative Procedure Act [see Short Title note set out preceding section 551 of this title]."

## CHAPTER 8—CONGRESSIONAL REVIEW OF AGENCY RULEMAKING

Sec.
801.    Congressional review.
802.    Congressional disapproval procedure.
803.    Special rule on statutory, regulatory, and judicial deadlines.
804.    Definitions.
805.    Judicial review.
806.    Applicability; severability.
807.    Exemption for monetary policy.
808.    Effective date of certain rules.

### § 801. Congressional review

(a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

# 35 U.S.C. § 141

vention was filed. Any such petition may be filed only within the 1-year period beginning on the date of the first publication of a claim to an invention that is the same or substantially the same as the earlier application's claim to the invention, shall be made under oath, and shall be supported by substantial evidence. Whenever the Director determines that a petition filed under this subsection demonstrates that the standards for instituting a derivation proceeding are met, the Director may institute a derivation proceeding. The determination by the Director whether to institute a derivation proceeding shall be final and nonappealable.''

Subsec. (e). Pub. L. 112–274, § 1(e)(1), substituted ''correct inventor'' for ''correct inventors''.

2011—Pub. L. 112–29, § 3(i), amended section generally. Prior to amendment, section related to interferences.

Subsec. (b)(2). Pub. L. 112–29, § 20(j), struck out ''of this title'' after ''122(b)''.

2002—Subsecs. (a), (c), (d). Pub. L. 107–273 made technical correction to directory language of Pub. L. 106–113, § 1000(a)(9) [title IV, § 4732(a)(10)(A)]. See 1999 Amendment notes below.

1999—Subsec. (a). Pub. L. 106–113, § 1000(a)(9) [title IV, § 4732(a)(10)(A)], as amended by Pub. L. 107–273, substituted ''Director'' for ''Commissioner'' wherever appearing.

Subsec. (b). Pub. L. 106–113, § 1000(a)(9) [title IV, § 4507(11)], designated existing provisions as par. (1) and added par. (2).

Subsecs. (c), (d). Pub. L. 106–113, § 1000(a)(9) [title IV, § 4732(a)(10)(A)], as amended by Pub. L. 107–273, substituted ''Director'' for ''Commissioner'' wherever appearing.

1984—Subsec. (a). Pub. L. 98–622, § 202, amended subsec. (a) generally, substituting '', an interference may be declared and the Commissioner shall give notice of such declaration to the applicants, or applicant and patentee, as the case may be'' for ''he shall give notice thereof to the applicants, or applicant and patentee, as the case may be'' and substituting provisions vesting jurisdiction for determining questions of interference in the Board of Patent Appeals and Interferences for provisions vesting such jurisdiction in a board of patent interferences.

Subsec. (d). Pub. L. 98–622, § 105, added subsec. (d).

1975—Subsecs. (a), (c). Pub. L. 93–596 substituted ''Patent and Trademark Office'' for ''Patent Office'' wherever appearing.

1962—Pub. L. 87–831 designated first and second pars. as subsecs. (a) and (b) and added subsec. (c).

EFFECTIVE DATE OF 2013 AMENDMENT

Pub. L. 112–274, § 1(e)(2), Jan. 14, 2013, 126 Stat. 2456, provided that: ''The amendment made by paragraph (1) [amending this section] shall be effective as if included in the amendment made by section 3(i) of the Leahy-Smith America Invents Act [Pub. L. 112–29].''

Pub. L. 112–274, § 1(k)(2), Jan. 14, 2013, 126 Stat. 2458, provided that: ''The amendment made by paragraph (1) [amending this section] shall be effective as if included in the amendment made by section 3(i) of the Leahy-Smith America Invents Act [Pub. L. 112–29].''

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by section 3(i) of Pub. L. 112–29 effective upon the expiration of the 18-month period beginning on Sept. 16, 2011, and applicable to certain applications for patent and any patents issuing thereon, see section 3(n) of Pub. L. 112–29, set out as an Effective Date of 2011 Amendment; Savings Provisions note under section 100 of this title.

Amendment by section 20(j) of Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to proceedings commenced on or after that effective date, see section 20(l) of Pub. L. 112–29, set out as a note under section 2 of this title.

EFFECTIVE DATE OF 1999 AMENDMENT

Amendment by section 1000(a)(9) [title IV, § 4507(11)] of Pub. L. 106–113 effective Nov. 29, 2000, and applicable only to applications (including international applications designating the United States) filed on or after that date, see section 1000(a)(9) [title IV, § 4508] of Pub. L. 106–113, as amended, set out as a note under section 10 of this title.

Amendment by section 1000(a)(9) [title IV, § 4732(a)(10)(A)] of Pub. L. 106–113 effective 4 months after Nov. 29, 1999, see section 1000(a)(9) [title IV, § 4731] of Pub. L. 106–113, set out as a note under section 1 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by section 105 of Pub. L. 98–622 applicable to all United States patents granted before, on, or after Nov. 8, 1984, and to all applications for United States patents pending on or filed after that date, except as otherwise provided, see section 106 of Pub. L. 98–622, set out as a note under section 103 of this title.

Amendment by section 202 of Pub. L. 98–622 effective three months after Nov. 8, 1984, see section 207 of Pub. L. 98–622, set out as a note under section 41 of this title.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 93–596 effective Jan. 2, 1975, see section 4 of Pub. L. 93–596, set out as a note under section 1111 of Title 15, Commerce and Trade.

SAVINGS PROVISIONS

Pub. L. 112–274, § 1(k)(3), Jan. 14, 2013, 126 Stat. 2458, provided that: ''The provisions of sections 6 and 141 of title 35, United States Code, and section 1295(a)(4)(A) of title 28, United States Code, as in effect on September 15, 2012, shall apply to interference proceedings that are declared after September 15, 2012, under section 135 of title 35, United States Code, as in effect before the effective date under section 3(n) of the Leahy-Smith America Invents Act [Pub. L. 112–29, set out as a note under section 100 of this title]. The Patent Trial and Appeal Board may be deemed to be the Board of Patent Appeals and Interferences for purposes of such interference proceedings.''

Provisions of 35 U.S.C. 135, as in effect on the day before the expiration of the 18-month period beginning on Sept. 16, 2011, apply to each claim of certain applications for patent, and certain patents issued thereon, for which the amendments made by section 3 of Pub. L. 112–29 also apply, see section 3(n)(2) of Pub. L. 112–29, set out as an Effective Date of 2011 Amendment; Savings Provisions note under section 100 of this title.

## CHAPTER 13—REVIEW OF PATENT AND TRADEMARK OFFICE DECISIONS

Sec.
141. Appeal to Court of Appeals for the Federal Circuit.
142. Notice of appeal.
143. Proceedings on appeal.
144. Decision on appeal.
145. Civil action to obtain patent.
146. Civil action in case of derivation proceeding.

AMENDMENTS

2011—Pub. L. 112–29, § 3(j)(6), Sept. 16, 2011, 125 Stat. 291, amended item 146 generally, substituting ''Civil action in case of derivation proceeding'' for ''Civil action in case of interference''.

1982—Pub. L. 97–164, title I, § 163(b)(1), Apr. 2, 1982, 96 Stat. 49, substituted ''Court of Appeals for the Federal Circuit'' for ''Court of Customs and Patent Appeals'' in item 141.

1975—Pub. L. 93–596, § 1, Jan. 2, 1975, 88 Stat. 1949, substituted ''PATENT AND TRADEMARK OFFICE'' for ''PATENT OFFICE'' in chapter heading.

## § 141. Appeal to Court of Appeals for the Federal Circuit

(a) EXAMINATIONS.—An applicant who is dissatisfied with the final decision in an appeal to the

Patent Trial and Appeal Board under section 134(a) may appeal the Board's decision to the United States Court of Appeals for the Federal Circuit. By filing such an appeal, the applicant waives his or her right to proceed under section 145.

(b) REEXAMINATIONS.—A patent owner who is dissatisfied with the final decision in an appeal of a reexamination to the Patent Trial and Appeal Board under section 134(b) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

(c) POST-GRANT AND INTER PARTES REVIEWS.— A party to an inter partes review or a post-grant review who is dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) or 328(a) (as the case may be) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.

(d) DERIVATION PROCEEDINGS.—A party to a derivation proceeding who is dissatisfied with the final decision of the Patent Trial and Appeal Board in the proceeding may appeal the decision to the United States Court of Appeals for the Federal Circuit, but such appeal shall be dismissed if any adverse party to such derivation proceeding, within 20 days after the appellant has filed notice of appeal in accordance with section 142, files notice with the Director that the party elects to have all further proceedings conducted as provided in section 146. If the appellant does not, within 30 days after the filing of such notice by the adverse party, file a civil action under section 146, the Board's decision shall govern the further proceedings in the case.

(July 19, 1952, ch. 950, 66 Stat. 802; Pub. L. 97–164, title I, §163(a)(7), (b)(2), Apr. 2, 1982, 96 Stat. 49, 50; Pub. L. 98–622, title II, §203(a), Nov. 8, 1984, 98 Stat. 3387; Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §§4605(c), 4732(a)(10)(A)], Nov. 29, 1999, 113 Stat. 1536, 1501A–571, 1501A–582; Pub. L. 107–273, div. C, title III, §§13106(c), 13206(b)(1)(B), Nov. 2, 2002, 116 Stat. 1901, 1906; Pub. L. 112–29, §7(c)(1), Sept. 16, 2011, 125 Stat. 314.)

HISTORICAL AND REVISION NOTES

Based on Title 35, U.S.C., 1946 ed., §59a (R.S. 4911, amended (1) Mar. 2, 1927, ch. 273, §8, 44 Stat. 1336, (2) Mar. 2, 1929, ch. 488, §2a, 45 Stat. 1476, (3) Aug. 5, 1939, ch. 451, §3, 53 Stat. 1212).

Changes in language are made.

AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to appeals to the Court of Appeals for the Federal Circuit.

2002—Pub. L. 107–273, §13206(b)(1)(B), made technical correction to directory language of Pub. L. 106–113, §1000(a)(9) [title IV, §4732(a)(10)(A)]. See 1999 Amendment note below.

Pub. L. 107–273, §13106(c), inserted ", or a third-party requester in an inter partes reexamination proceeding, who is" after "patent owner" in third sentence.

1999—Pub. L. 106–113, §1000(a)(9) [title IV, §4732(a)(10)(A)], as amended by Pub. L. 107–273, §13206(b)(1)(B), substituted "Director" for "Commissioner".

Pub. L. 106–113, §1000(a)(9) [title IV, §4605(c)], inserted after second sentence "A patent owner in any reexamination proceeding dissatisfied with the final decision in an appeal to the Board of Patent Appeals and Interferences under section 134 may appeal the decision only

to the United States Court of Appeals for the Federal Circuit."

1984—Pub. L. 98–622, §203(a)(1)(A), substituted "in an appeal to the Board of Patent Appeals and Interferences under section 134 of this title may appeal the decision" for "of the Board of Patent Appeals may appeal" in first sentence.

Pub. L. 98–622, §203(a)(1)(B), substituted ". By filing such an appeal the applicant waives his or her right" for ", thereby waiving his right" in first sentence.

Pub. L. 98–622, §203(a)(2)(A), substituted "Board of Patent Appeals and Interferences on the interference may appeal the decision" for "board of patent interferences on the question of priority of appeal" in second sentence.

Pub. L. 98–622, §203(a)(2)(B), substituted "In accordance with" for "according to" in second sentence.

Pub. L. 98–622, §203(a)(2)(C), substituted "the party" for "he" in second sentence.

Pub. L. 98–622, §203(a)(3), reenacted last sentence with minor changes in wording.

1982—Pub. L. 97–164, §163(b)(2), substituted "Court of Appeals for the Federal Circuit" for "Court of Customs and Patent Appeals" in section catchline.

Pub. L. 97–164, §163(a)(7), substituted "Court of Appeals for the Federal Circuit" for "Court of Customs and Patent Appeals" in two places.

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to proceedings commenced on or after that effective date, with certain exceptions, see section 7(e) of Pub. L. 112–29, set out as a note under section 6 of this title.

EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by section 13106(c) of Pub. L. 107–273 applicable with respect to any reexamination proceeding commenced on or after Nov. 2, 2002, see section 13106(d) of Pub. L. 107–273, set out as a note under section 134 of this title.

EFFECTIVE DATE OF 1999 AMENDMENT

Amendment by section 1000(a)(9) [title IV, §4605(c)] of Pub. L. 106–113 applicable to any reexamination filed in the United States Patent and Trademark Office on or after Nov. 2, 2002, see section 13202(d) of Pub. L. 107–273, set out as a note under section 134 of this title.

Amendment by section 1000(a)(9) [title IV, §4605(c)] of Pub. L. 106–113 effective Nov. 29, 1999, and applicable to any patent issuing from an original application filed in the United States on or after that date, see section 1000(a)(9) [title IV, §4608(a)] of Pub. L. 106–113, set out as a note under section 41 of this title.

Amendment by section 1000(a)(9) [title IV, §4732(a)(10)(A)] of Pub. L. 106–113 effective 4 months after Nov. 29, 1999, see section 1000(a)(9) [title IV, §4731] of Pub. L. 106–113, set out as a note under section 1 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–622 effective three months after Nov. 8, 1984, see section 207 of Pub. L. 98–622, set out as a note under section 41 of this title.

EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of Title 28, Judiciary and Judicial Procedure.

§ 142. Notice of appeal

When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the Patent and Trademark Office a written notice of appeal directed to the

# 35 U.S.C. § 314

Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

Amendment by section 6(c)(3)(A)(ii) of Pub. L. 112–29 effective Sept. 16, 2011, and applicable to requests for inter partes reexamination filed on or after Sept. 16, 2011, but before the effective date set forth in section 6(c)(2)(A) of Pub. L. 112–29, with continued applicability of prior provisions, see section 6(c)(3)(B), (C) of Pub. L. 112–29, set out as a note under section 312 of this title.

## §314. Conduct of inter partes reexamination proceedings

(a) IN GENERAL.—Except as otherwise provided in this section, reexamination shall be conducted according to the procedures established for initial examination under the provisions of sections 132 and 133. In any inter partes reexamination proceeding under this chapter, the patent owner shall be permitted to propose any amendment to the patent and a new claim or claims, except that no proposed amended or new claim enlarging the scope of the claims of the patent shall be permitted.

(b) RESPONSE.—(1) With the exception of the inter partes reexamination request, any document filed by either the patent owner or the third-party requester shall be served on the other party. In addition, the Office shall send to the third-party requester a copy of any communication sent by the Office to the patent owner concerning the patent subject to the inter partes reexamination proceeding.

(2) Each time that the patent owner files a response to an action on the merits from the Patent and Trademark Office, the third-party requester shall have one opportunity to file written comments addressing issues raised by the action of the Office or the patent owner's response thereto, if those written comments are received by the Office within 30 days after the date of service of the patent owner's response.

(c) SPECIAL DISPATCH.—Unless otherwise provided by the Director for good cause, all inter partes reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, shall be conducted with special dispatch within the Office.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–568; amended Pub. L. 107–273, div. C, title III, §13202(a)(3), (c)(1), Nov. 2, 2002, 116 Stat. 1901, 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 300.)

AMENDMENT OF SECTION

*Pub. L. 112–29, §6(a), (c)(2), Sept. 16, 2011, 125 Stat. 300, 304, provided that, effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, this section is amended to read as follows:*

### §314. Institution of inter partes review

*(a) Threshold.—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would pre-*vail with respect to at least 1 of the claims challenged in the petition.

*(b) Timing.—The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after—*

*(1) receiving a preliminary response to the petition under section 313; or*

*(2) if no such preliminary response is filed, the last date on which such response may be filed.*

*(c) Notice.—The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable. Such notice shall include the date on which the review shall commence.*

*(d) No Appeal.—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.*

*See 2011 Amendment note below.*

AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to conduct of inter partes reexamination proceedings.

2002—Pub. L. 107–273, §13202(c)(1), made technical correction to directory language of Pub. L. 106–113, which enacted this section.

Subsec. (b). Pub. L. 107–273, §13202(a)(3), redesignated par. (2) as (1), substituted "the Office shall send to the third-party requester a copy" for "the third-party requester shall receive a copy", redesignated par. (3) as (2), and struck out former par. (1) which read as follows: "This subsection shall apply to any inter partes reexamination proceeding in which the order for inter partes reexamination is based upon a request by a third-party requester."

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

## §315. Appeal

(a) PATENT OWNER.—The patent owner involved in an inter partes reexamination proceeding under this chapter—

(1) may appeal under the provisions of section 134 and may appeal under the provisions of sections 141 through 144, with respect to any decision adverse to the patentability of any original or proposed amended or new claim of the patent; and

(2) may be a party to any appeal taken by a third-party requester under subsection (b).

(b) THIRD-PARTY REQUESTER.—A third-party requester—

(1) may appeal under the provisions of section 134, and may appeal under the provisions of sections 141 through 144, with respect to any final decision favorable to the patentability of any original or proposed amended or new claim of the patent; and

(2) may, subject to subsection (c), be a party to any appeal taken by the patent owner under the provisions of section 134 or sections 141 through 144.

(c) CIVIL ACTION.—A third-party requester whose request for an inter partes reexamination

# 35 U.S.C. § 315

and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

(b) TIMING.—The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after—

(1) receiving a preliminary response to the petition under section 313; or

(2) if no such preliminary response is filed, the last date on which such response may be filed.

(c) NOTICE.—The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable. Such notice shall include the date on which the review shall commence.

(d) NO APPEAL.—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

(Added Pub. L. 106–113, div. B, § 1000(a)(9) [title IV, § 4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–568; amended Pub. L. 107–273, div. C, title III, § 13202(a)(3), (c)(1), Nov. 2, 2002, 116 Stat. 1901, 1902; Pub. L. 112–29, § 6(a), Sept. 16, 2011, 125 Stat. 300.)

AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to conduct of inter partes reexamination proceedings.

2002—Pub. L. 107–273, § 13202(c)(1), made technical correction to directory language of Pub. L. 106–113, which enacted this section.

Subsec. (b). Pub. L. 107–273, § 13202(a)(3), redesignated par. (2) as (1), substituted "the Office shall send to the third-party requester a copy" for "the third-party requester shall receive a copy", redesignated par. (3) as (2), and struck out former par. (1) which read as follows: "This subsection shall apply to any inter partes reexamination proceeding in which the order for inter partes reexamination is based upon a request by a third-party requester."

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

§ 315. Relation to other proceedings or actions

(a) INFRINGER'S CIVIL ACTION.—

(1) INTER PARTES REVIEW BARRED BY CIVIL ACTION.—An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent.

(2) STAY OF CIVIL ACTION.—If the petitioner or real party in interest files a civil action challenging the validity of a claim of the patent on or after the date on which the petitioner files a petition for inter partes review of the patent, that civil action shall be automatically stayed until either—

(A) the patent owner moves the court to lift the stay;

(B) the patent owner files a civil action or counterclaim alleging that the petitioner or real party in interest has infringed the patent; or

(C) the petitioner or real party in interest moves the court to dismiss the civil action.

(3) TREATMENT OF COUNTERCLAIM.—A counterclaim challenging the validity of a claim of a patent does not constitute a civil action challenging the validity of a claim of a patent for purposes of this subsection.

(b) PATENT OWNER'S ACTION.—An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

(c) JOINDER.—If the Director institutes an inter partes review, the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition under section 311 that the Director, after receiving a preliminary response under section 313 or the expiration of the time for filing such a response, determines warrants the institution of an inter partes review under section 314.

(d) MULTIPLE PROCEEDINGS.—Notwithstanding sections 135(a), 251, and 252, and chapter 30, during the pendency of an inter partes review, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination of any such matter or proceeding.

(e) ESTOPPEL.—

(1) PROCEEDINGS BEFORE THE OFFICE.—The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

(2) CIVIL ACTIONS AND OTHER PROCEEDINGS.—The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

(Added Pub. L. 106–113, div. B, § 1000(a)(9) [title IV, § 4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–569; amended Pub. L. 107–273, div. C, title III, §§ 13106(a), 13202(a)(4), (c)(1), Nov. 2, 2002, 116 Stat. 1900–1902; Pub. L. 112–29, § 6(a), Sept. 16, 2011, 125 Stat. 300.)

REFERENCES IN TEXT

Section 337 of the Tariff Act of 1930, referred to in subsec. (e)(2), is classified to section 1337 of Title 19, Customs Duties.

AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to appeals.

2002—Pub. L. 107–273, §13202(c)(1), made technical correction to directory language of Pub. L. 106–113, which enacted this section.

Subsec. (b). Pub. L. 107–273, §13106(a), reenacted heading without change and amended text generally. Prior to amendment, text read as follows: "A third-party requester may—

"(1) appeal under the provisions of section 134 with respect to any final decision favorable to the patentability of any original or proposed amended or new claim of the patent; or

"(2) be a party to any appeal taken by the patent owner under the provisions of section 134, subject to subsection (c)."

Subsec. (c). Pub. L. 107–273, §13202(a)(4), struck out "United States Code," after "title 28,".

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by section 13106(a) of Pub. L. 107–273 applicable with respect to any reexamination proceeding commenced on or after Nov. 2, 2002, see section 13106(d) of Pub. L. 107–273, set out as a note under section 134 of this title.

ESTOPPEL EFFECT OF REEXAMINATION

Pub. L. 106–113, div. B, §1000(a)(9) [title IV, subtitle F, §4607], Nov. 29, 1999, 113 Stat. 1536, 1501A–571, provided for estoppel from challenging certain facts determined during inter partes reexamination under former section 311 of this title and contained a severability provision.

## §316. Conduct of inter partes review

(a) REGULATIONS.—The Director shall prescribe regulations—

(1) providing that the file of any proceeding under this chapter shall be made available to the public, except that any petition or document filed with the intent that it be sealed shall, if accompanied by a motion to seal, be treated as sealed pending the outcome of the ruling on the motion;

(2) setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a);

(3) establishing procedures for the submission of supplemental information after the petition is filed;

(4) establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title;

(5) setting forth standards and procedures for discovery of relevant evidence, including that such discovery shall be limited to—

(A) the deposition of witnesses submitting affidavits or declarations; and

(B) what is otherwise necessary in the interest of justice;

(6) prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding;

(7) providing for protective orders governing the exchange and submission of confidential information;

(8) providing for the filing by the patent owner of a response to the petition under section 313 after an inter partes review has been instituted, and requiring that the patent owner file with such response, through affidavits or declarations, any additional factual evidence and expert opinions on which the patent owner relies in support of the response;

(9) setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims, and ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent;

(10) providing either party with the right to an oral hearing as part of the proceeding;

(11) requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c);

(12) setting a time period for requesting joinder under section 315(c); and

(13) providing the petitioner with at least 1 opportunity to file written comments within a time period established by the Director.

(b) CONSIDERATIONS.—In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

(c) PATENT TRIAL AND APPEAL BOARD.—The Patent Trial and Appeal Board shall, in accordance with section 6, conduct each inter partes review instituted under this chapter.

(d) AMENDMENT OF THE PATENT.—

(1) IN GENERAL.—During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:

(A) Cancel any challenged patent claim.

(B) For each challenged claim, propose a reasonable number of substitute claims.

(2) ADDITIONAL MOTIONS.—Additional motions to amend may be permitted upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director.

(3) SCOPE OF CLAIMS.—An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.

# 35 U.S.C. § 316

REFERENCES IN TEXT

Section 337 of the Tariff Act of 1930, referred to in subsec. (e)(2), is classified to section 1337 of Title 19, Customs Duties.

AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to appeals.

2002—Pub. L. 107–273, §13202(c)(1), made technical correction to directory language of Pub. L. 106–113, which enacted this section.

Subsec. (b). Pub. L. 107–273, §13106(a), reenacted heading without change and amended text generally. Prior to amendment, text read as follows: "A third-party requester may—

"(1) appeal under the provisions of section 134 with respect to any final decision favorable to the patentability of any original or proposed amended or new claim of the patent; or

"(2) be a party to any appeal taken by the patent owner under the provisions of section 134, subject to subsection (c)."

Subsec. (c). Pub. L. 107–273, §13202(a)(4), struck out "United States Code," after "title 28,".

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by section 13106(a) of Pub. L. 107–273 applicable with respect to any reexamination proceeding commenced on or after Nov. 2, 2002, see section 13106(d) of Pub. L. 107–273, set out as a note under section 134 of this title.

ESTOPPEL EFFECT OF REEXAMINATION

Pub. L. 106–113, div. B, §1000(a)(9) [title IV, subtitle F, §4607], Nov. 29, 1999, 113 Stat. 1536, 1501A–571, provided for estoppel from challenging certain facts determined during inter partes reexamination under former section 311 of this title and contained a severability provision.

## §316. Conduct of inter partes review

(a) REGULATIONS.—The Director shall prescribe regulations—

(1) providing that the file of any proceeding under this chapter shall be made available to the public, except that any petition or document filed with the intent that it be sealed shall, if accompanied by a motion to seal, be treated as sealed pending the outcome of the ruling on the motion;

(2) setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a);

(3) establishing procedures for the submission of supplemental information after the petition is filed;

(4) establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title;

(5) setting forth standards and procedures for discovery of relevant evidence, including that such discovery shall be limited to—

(A) the deposition of witnesses submitting affidavits or declarations; and

(B) what is otherwise necessary in the interest of justice;

(6) prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding;

(7) providing for protective orders governing the exchange and submission of confidential information;

(8) providing for the filing by the patent owner of a response to the petition under section 313 after an inter partes review has been instituted, and requiring that the patent owner file with such response, through affidavits or declarations, any additional factual evidence and expert opinions on which the patent owner relies in support of the response;

(9) setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims, and ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent;

(10) providing either party with the right to an oral hearing as part of the proceeding;

(11) requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c);

(12) setting a time period for requesting joinder under section 315(c); and

(13) providing the petitioner with at least 1 opportunity to file written comments within a time period established by the Director.

(b) CONSIDERATIONS.—In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

(c) PATENT TRIAL AND APPEAL BOARD.—The Patent Trial and Appeal Board shall, in accordance with section 6, conduct each inter partes review instituted under this chapter.

(d) AMENDMENT OF THE PATENT.—

(1) IN GENERAL.—During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:

(A) Cancel any challenged patent claim.

(B) For each challenged claim, propose a reasonable number of substitute claims.

(2) ADDITIONAL MOTIONS.—Additional motions to amend may be permitted upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director.

(3) SCOPE OF CLAIMS.—An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.

(e) EVIDENTIARY STANDARDS.—In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–569; amended Pub. L. 107–273, div. C, title III, §13202(c)(1), Nov. 2, 2002, 116 Stat. 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 302.)

#### AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to certificate of patentability, unpatentability, and claim cancellation.

2002—Pub. L. 107–273 made technical correction to directory language of Pub. L. 106–113, which enacted this section.

#### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

### §317. Settlement

(a) IN GENERAL.—An inter partes review instituted under this chapter shall be terminated with respect to any petitioner upon the joint request of the petitioner and the patent owner, unless the Office has decided the merits of the proceeding before the request for termination is filed. If the inter partes review is terminated with respect to a petitioner under this section, no estoppel under section 315(e) shall attach to the petitioner, or to the real party in interest or privy of the petitioner, on the basis of that petitioner's institution of that inter partes review. If no petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a).

(b) AGREEMENTS IN WRITING.—Any agreement or understanding between the patent owner and a petitioner, including any collateral agreements referred to in such agreement or understanding, made in connection with, or in contemplation of, the termination of an inter partes review under this section shall be in writing and a true copy of such agreement or understanding shall be filed in the Office before the termination of the inter partes review as between the parties. At the request of a party to the proceeding, the agreement or understanding shall be treated as business confidential information, shall be kept separate from the file of the involved patents, and shall be made available only to Federal Government agencies on written request, or to any person on a showing of good cause.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–570; amended Pub. L. 107–273, div. C, title III, §13202(a)(5), (c)(1), Nov. 2, 2002, 116 Stat. 1901, 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 303.)

#### AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to restriction on subsequent request for inter partes reexamination.

2002—Pub. L. 107–273, §13202(c)(1), made technical correction to directory language of Pub. L. 106–113, which enacted this section.

Subsec. (a). Pub. L. 107–273, §13202(a)(5)(A), substituted "third-party requester nor its privies" for "patent owner nor the third-party requester, if any, nor privies of either".

Subsec. (b). Pub. L. 107–273, §13202(a)(5)(B), struck out "United States Code," after "title 28,".

#### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

### §318. Decision of the Board

(a) FINAL WRITTEN DECISION.—If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

(b) CERTIFICATE.—If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

(c) INTERVENING RIGHTS.—Any proposed amended or new claim determined to be patentable and incorporated into a patent following an inter partes review under this chapter shall have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation therefor, before the issuance of a certificate under subsection (b).

(d) DATA ON LENGTH OF REVIEW.—The Office shall make available to the public data describing the length of time between the institution of, and the issuance of a final written decision under subsection (a) for, each inter partes review.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–570; amended Pub. L. 107–273, div. C, title III, §13202(c)(1), Nov. 2, 2002, 116 Stat. 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 303.)

#### AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, text read as follows: "Once an order for inter partes reexamination of a patent has been issued under section 313, the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the inter partes reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice."

2002—Pub. L. 107–273 made technical correction to directory language of Pub. L. 106–113, which enacted this section.

# 35 U.S.C. § 318

(e) EVIDENTIARY STANDARDS.—In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–569; amended Pub. L. 107–273, div. C, title III, §13202(c)(1), Nov. 2, 2002, 116 Stat. 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 302.)

### AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to certificate of patentability, unpatentability, and claim cancellation.

2002—Pub. L. 107–273 made technical correction to directory language of Pub. L. 106–113, which enacted this section.

### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

## § 317. Settlement

(a) IN GENERAL.—An inter partes review instituted under this chapter shall be terminated with respect to any petitioner upon the joint request of the petitioner and the patent owner, unless the Office has decided the merits of the proceeding before the request for termination is filed. If the inter partes review is terminated with respect to a petitioner under this section, no estoppel under section 315(e) shall attach to the petitioner, or to the real party in interest or privy of the petitioner, on the basis of that petitioner's institution of that inter partes review. If no petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a).

(b) AGREEMENTS IN WRITING.—Any agreement or understanding between the patent owner and a petitioner, including any collateral agreements referred to in such agreement or understanding, made in connection with, or in contemplation of, the termination of an inter partes review under this section shall be in writing and a true copy of such agreement or understanding shall be filed in the Office before the termination of the inter partes review as between the parties. At the request of a party to the proceeding, the agreement or understanding shall be treated as business confidential information, shall be kept separate from the file of the involved patents, and shall be made available only to Federal Government agencies on written request, or to any person on a showing of good cause.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–570; amended Pub. L. 107–273, div. C, title III, §13202(a)(5), (c)(1), Nov. 2, 2002, 116 Stat. 1901, 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 303.)

### AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, section related to restriction on subsequent request for inter partes reexamination.

2002—Pub. L. 107–273, §13202(c)(1), made technical correction to directory language of Pub. L. 106–113, which enacted this section.

Subsec. (a). Pub. L. 107–273, §13202(a)(5)(A), substituted "third-party requester nor its privies" for "patent owner nor the third-party requester, if any, nor privies of either".

Subsec. (b). Pub. L. 107–273, §13202(a)(5)(B), struck out "United States Code," after "title 28,".

### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

## § 318. Decision of the Board

(a) FINAL WRITTEN DECISION.—If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

(b) CERTIFICATE.—If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

(c) INTERVENING RIGHTS.—Any proposed amended or new claim determined to be patentable and incorporated into a patent following an inter partes review under this chapter shall have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation therefor, before the issuance of a certificate under subsection (b).

(d) DATA ON LENGTH OF REVIEW.—The Office shall make available to the public data describing the length of time between the institution of, and the issuance of a final written decision under subsection (a) for, each inter partes review.

(Added Pub. L. 106–113, div. B, §1000(a)(9) [title IV, §4604(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–570; amended Pub. L. 107–273, div. C, title III, §13202(c)(1), Nov. 2, 2002, 116 Stat. 1902; Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 303.)

### AMENDMENTS

2011—Pub. L. 112–29 amended section generally. Prior to amendment, text read as follows: "Once an order for inter partes reexamination of a patent has been issued under section 313, the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the inter partes reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice."

2002—Pub. L. 107–273 made technical correction to directory language of Pub. L. 106–113, which enacted this section.

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

## §319. Appeal

A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) may appeal the decision pursuant to sections 141 through 144. Any party to the inter partes review shall have the right to be a party to the appeal.

(Added Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 304.)

EFFECTIVE DATE

Section effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as an Effective Date of 2011 Amendment note under section 311 of this title.

## CHAPTER 32—POST-GRANT REVIEW

Sec.
321.    Post-grant review.
322.    Petitions.
323.    Preliminary response to petition.
324.    Institution of post-grant review.
325.    Relation to other proceedings or actions.
326.    Conduct of post-grant review.
327.    Settlement.
328.    Decision of the Board.
329.    Appeal.

## §321. Post-grant review

(a) IN GENERAL.—Subject to the provisions of this chapter, a person who is not the owner of a patent may file with the Office a petition to institute a post-grant review of the patent. The Director shall establish, by regulation, fees to be paid by the person requesting the review, in such amounts as the Director determines to be reasonable, considering the aggregate costs of the post-grant review.

(b) SCOPE.—A petitioner in a post-grant review may request to cancel as unpatentable 1 or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of section 282(b) (relating to invalidity of the patent or any claim).

(c) FILING DEADLINE.—A petition for a post-grant review may only be filed not later than the date that is 9 months after the date of the grant of the patent or of the issuance of a reissue patent (as the case may be).

(Added Pub. L. 112–29, §6(d), Sept. 16, 2011, 125 Stat. 306.)

EFFECTIVE DATE

Pub. L. 112–29, §6(f)(2), (3), Sept. 16, 2011, 125 Stat. 311, provided that:

"(2) APPLICABILITY.—

"(A) IN GENERAL.—The amendments made by subsection (d) [enacting this chapter] shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act [Sept. 16, 2011] and, except as provided in section 18 [set out as a note below] and in paragraph (3), shall apply only to patents described in section 3(n)(1) [set out as an Effective Date of 2011 Amendment; Savings Provisions note under section 100 of this title].

"(B) LIMITATION.—The Director [Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office] may impose a limit on the number of post-grant reviews that may be instituted under chapter 32 of title 35, United States Code, during each of the first 4 1-year periods in which the amendments made by subsection (d) are in effect.

"(3) PENDING INTERFERENCES.—

"(A) PROCEDURES IN GENERAL.—The Director shall determine, and include in the regulations issued under paragraph (1) [set out as a note below], the procedures under which an interference commenced before the effective date set forth in paragraph (2)(A) is to proceed, including whether such interference—

"(i) is to be dismissed without prejudice to the filing of a petition for a post-grant review under chapter 32 of title 35, United States Code; or

"(ii) is to proceed as if this Act [see Short Title of 2011 Amendment note set out under section 1 of this title] had not been enacted.

"(B) PROCEEDINGS BY PATENT TRIAL AND APPEAL BOARD.—For purposes of an interference that is commenced before the effective date set forth in paragraph (2)(A), the Director may deem the Patent Trial and Appeal Board to be the Board of Patent Appeals and Interferences, and may allow the Patent Trial and Appeal Board to conduct any further proceedings in that interference.

"(C) APPEALS.—The authorization to appeal or have remedy from derivation proceedings in sections 141(d) and 146 of title 35, United States Code, as amended by this Act, and the jurisdiction to entertain appeals from derivation proceedings in section 1295(a)(4)(A) of title 35, United States Code, as amended by this Act, shall be deemed to extend to any final decision in an interference that is commenced before the effective date set forth in paragraph (2)(A) of this subsection and that is not dismissed pursuant to this paragraph."

REGULATIONS

Pub. L. 112–29, §6(f)(1), Sept. 16, 2011, 125 Stat. 311, provided that: "The Director [Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office] shall, not later than the date that is 1 year after the date of the enactment of this Act [Sept. 16, 2011], issue regulations to carry out chapter 32 of title 35, United States Code, as added by subsection (d) of this section."

TRANSITIONAL PROGRAM FOR COVERED BUSINESS
METHOD PATENTS

Pub. L. 112–29, §18, Sept. 16, 2011, 125 Stat. 329, as amended by Pub. L. 112–274, §1(b), Jan. 14, 2013, 126 Stat. 2456, provided that:

"(a) TRANSITIONAL PROGRAM.—

"(1) ESTABLISHMENT.—Not later than the date that is 1 year after the date of the enactment of this Act [Sept. 16, 2011], the Director [Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office] shall issue regulations establishing and implementing a transitional post-grant review proceeding for review of the validity of covered business method patents. The transitional proceeding implemented pursuant to this subsection shall be regarded as, and shall employ the standards and procedures of, a post-grant review under chapter 32 of title 35, United States Code, subject to the following:

"(A) Section 321(c) of title 35, United States Code, and subsections (b), (e)(2), and (f) of section 325 of such title shall not apply to a transitional proceeding.

"(B) A person may not file a petition for a transitional proceeding with respect to a covered business

# 35 U.S.C. § 319

EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–29 effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as a note under section 311 of this title.

## §319. Appeal

A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) may appeal the decision pursuant to sections 141 through 144. Any party to the inter partes review shall have the right to be a party to the appeal.

(Added Pub. L. 112–29, §6(a), Sept. 16, 2011, 125 Stat. 304.)

EFFECTIVE DATE

Section effective upon the expiration of the 1-year period beginning on Sept. 16, 2011, and applicable to any patent issued before, on, or after that effective date, with provisions for graduated implementation, see section 6(c)(2) of Pub. L. 112–29, set out as an Effective Date of 2011 Amendment note under section 311 of this title.

## CHAPTER 32—POST-GRANT REVIEW

Sec.
321. Post-grant review.
322. Petitions.
323. Preliminary response to petition.
324. Institution of post-grant review.
325. Relation to other proceedings or actions.
326. Conduct of post-grant review.
327. Settlement.
328. Decision of the Board.
329. Appeal.

## §321. Post-grant review

(a) IN GENERAL.—Subject to the provisions of this chapter, a person who is not the owner of a patent may file with the Office a petition to institute a post-grant review of the patent. The Director shall establish, by regulation, fees to be paid by the person requesting the review, in such amounts as the Director determines to be reasonable, considering the aggregate costs of the post-grant review.

(b) SCOPE.—A petitioner in a post-grant review may request to cancel as unpatentable 1 or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of section 282(b) (relating to invalidity of the patent or any claim).

(c) FILING DEADLINE.—A petition for a post-grant review may only be filed not later than the date that is 9 months after the date of the grant of the patent or of the issuance of a reissue patent (as the case may be).

(Added Pub. L. 112–29, §6(d), Sept. 16, 2011, 125 Stat. 306.)

EFFECTIVE DATE

Pub. L. 112–29, §6(f)(2), (3), Sept. 16, 2011, 125 Stat. 311, provided that:

''(2) APPLICABILITY.—

''(A) IN GENERAL.—The amendments made by subsection (d) [enacting this chapter] shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act [Sept. 16, 2011] and, except as provided in section 18 [set out as a note below] and in paragraph (3), shall apply only to patents described in section 3(n)(1) [set out as an Effective Date of 2011 Amendment; Savings Provisions note under section 100 of this title].

''(B) LIMITATION.—The Director [Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office] may impose a limit on the number of post-grant reviews that may be instituted under chapter 32 of title 35, United States Code, during each of the first 4 1-year periods in which the amendments made by subsection (d) are in effect.

''(3) PENDING INTERFERENCES.—

''(A) PROCEDURES IN GENERAL.—The Director shall determine, and include in the regulations issued under paragraph (1) [set out as a note below], the procedures under which an interference commenced before the effective date set forth in paragraph (2)(A) is to proceed, including whether such interference—

''(i) is to be dismissed without prejudice to the filing of a petition for a post-grant review under chapter 32 of title 35, United States Code; or

''(ii) is to proceed as if this Act [see Short Title of 2011 Amendment note set out under section 1 of this title] had not been enacted.

''(B) PROCEEDINGS BY PATENT TRIAL AND APPEAL BOARD.—For purposes of an interference that is commenced before the effective date set forth in paragraph (2)(A), the Director may deem the Patent Trial and Appeal Board to be the Board of Patent Appeals and Interferences, and may allow the Patent Trial and Appeal Board to conduct any further proceedings in that interference.

''(C) APPEALS.—The authorization to appeal or have remedy from derivation proceedings in sections 141(d) and 146 of title 35, United States Code, as amended by this Act, and the jurisdiction to entertain appeals from derivation proceedings in section 1295(a)(4)(A) of title 28, United States Code, as amended by this Act, shall be deemed to extend to any final decision in an interference that is commenced before the effective date set forth in paragraph (2)(A) of this subsection and that is not dismissed pursuant to this paragraph.''

REGULATIONS

Pub. L. 112–29, §6(f)(1), Sept. 16, 2011, 125 Stat. 311, provided that: ''The Director [Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office] shall, not later than the date that is 1 year after the date of the enactment of this Act [Sept. 16, 2011], issue regulations to carry out chapter 32 of title 35, United States Code, as added by subsection (d) of this section.''

TRANSITIONAL PROGRAM FOR COVERED BUSINESS METHOD PATENTS

Pub. L. 112–29, §18, Sept. 16, 2011, 125 Stat. 329, as amended by Pub. L. 112–274, §1(b), Jan. 14, 2013, 126 Stat. 2456, provided that:

''(a) TRANSITIONAL PROGRAM.—

''(1) ESTABLISHMENT.—Not later than the date that is 1 year after the date of the enactment of this Act [Sept. 16, 2011], the Director [Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office] shall issue regulations establishing and implementing a transitional post-grant review proceeding for review of the validity of covered business method patents. The transitional proceeding implemented pursuant to this subsection shall be regarded as, and shall employ the standards and procedures of, a post-grant review under chapter 32 of title 35, United States Code, subject to the following:

''(A) Section 321(c) of title 35, United States Code, and subsections (b), (e)(2), and (f) of section 325 of such title shall not apply to a transitional proceeding.

''(B) A person may not file a petition for a transitional proceeding with respect to a covered business

# 37 C.F.R. § 42.108

(c) *No new testimonial evidence.* The preliminary response shall not present new testimony evidence beyond that already of record, except as authorized by the Board.

(d) *No amendment.* The preliminary response shall not include any amendment.

(e) *Disclaim Patent Claims.* The patent owner may file a statutory disclaimer under 35 U.S.C. 253(a) in compliance with § 1.321(a) of this chapter, disclaiming one or more claims in the patent. No *inter partes* review will be instituted based on disclaimed claims.

INSTITUTING *Inter Partes* REVIEW

### § 42.108  Institution of *inter partes* review.

(a) When instituting *inter partes* review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim.

(b) At any time prior to institution of *inter partes* review, the Board may deny some or all grounds for unpatentability for some or all of the challenged claims. Denial of a ground is a Board decision not to institute *inter partes* review on that ground.

(c) Sufficient grounds. *Inter partes* review shall not be instituted for a ground of unpatentability unless the Board decides that the petition supporting the ground would demonstrate that there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable. The Board's decision will take into account a patent owner preliminary response where such a response is filed.

AFTER INSTITUTION OF *Inter Partes* REVIEW

### § 42.120  Patent owner response.

(a) *Scope.* A patent owner may file a response to the petition addressing any ground for unpatentability not already denied. A patent owner response is filed as an opposition and is subject to the page limits provided in § 42.24.

(b) *Due date for response.* If no time for filing a patent owner response to a petition is provided in a Board order, the default date for filing a patent owner response is three months from the date the *inter partes* review was instituted.

### § 42.121  Amendment of the patent.

(a) *Motion to amend.* A patent owner may file one motion to amend a patent, but only after conferring with the Board.

(1) *Due date.* Unless a due date is provided in a Board order, a motion to amend must be filed no later than the filing of a patent owner response.

(2) *Scope.* A motion to amend may be denied where:

(i) The amendment does not respond to a ground of unpatentability involved in the trial; or

(ii) The amendment seeks to enlarge the scope of the claims of the patent or introduce new subject matter.

(3) *A reasonable number of substitute claims.* A motion to amend may cancel a challenged claim or propose a reasonable number of substitute claims. The presumption is that only one substitute claim would be needed to replace each challenged claim, and it may be rebutted by a demonstration of need.

(b) *Content.* A motion to amend claims must include a claim listing, show the changes clearly, and set forth:

(1) The support in the original disclosure of the patent for each claim that is added or amended; and

(2) The support in an earlier-filed disclosure for each claim for which benefit of the filing date of the earlier filed disclosure is sought.

(c) *Additional motion to amend.* In addition to the requirements set forth in paragraphs (a) and (b) of this section, any additional motion to amend may not be filed without Board authorization. An additional motion to amend may be authorized when there is a good cause showing or a joint request of the petitioner and the patent owner to materially advance a settlement. In determining whether to authorize such an additional motion to amend, the Board will consider whether a petitioner has submitted supplemental information after the time period set for filing a motion to amend in paragraph (a)(1) of this section.

473

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2015 the foregoing Opening Brief and Addendum of Appellant Synopsys, Inc. was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system.  All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


Dated:  March 5, 2015                    /s/ Robert M. Loeb
                                         Robert M. Loeb
                                         *Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE 32(A)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Synopsys, Inc. certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains 10,128 words, based on the "Word Count" feature of Word 2010, including footnotes and endnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, Abbreviations, and Statement of Related Cases.

Date: March 5, 2015                    /s/ Robert M. Loeb
                                       Robert M. Loeb
                                       *Counsel for Plaintiff-Appellant*